## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CAROL A. KELLOGG, Individually, and ) 
as sole Heir-at-Law and Administrator )
of the Estate of Lee J. Witschi, deceased )
                                                 )
               Plaintiff, )
                                                 )
      v.                                            )
                                                 )   Case No. 6:18-CV-01061-JTM-JPO

KEITH COLEMAN, Sheriff of Ottawa )
County, Kansas, )
In his official capacity; )
                                                 )

RUSSELL THORNTON, Undersheriff of )
Ottawa County, Kansas, )
Both in his official and individual capacity; )
                                                 )

THE BOARD OF COUNTY )
COMMISSIONERS OF THE COUNTY )
OF OTTAWA )
In its official capacity; )
                                                 )

FRANK GENT, a Minneapolis, Kansas )
Police Officer )
Both in his official and individual capacity; )
                                                 )

WILLIAM CARR, a Minneapolis, Kansas )
Police Officer )
Both in his official and individual capacity; )
                                                 )

THE CITY OF MINNEAPOLIS, KANSAS )
In its official capacity; )
                                                 )

and )
                                                 )

THE EVANGELICAL LUTHERAN )
GOOD SAMARITAN SOCIETY d/b/a )
GOOD SAMARITAN SOCIETY - )
MINNEAPOLIS )
                                                 )
                          Defendants. )

## THIRD AMENDED COMPLAINT

Plaintiff Carol A. Kellogg ("Plaintiff"), Individually and in her capacity as sole heir-at-law and Administrator of the Estate of her late father, Lee J. Witschi, deceased ("Lee Witschi" or "Witschi" or "Lee"), by and through counsel, for her Third Amended Complaint states and alleges as follows:

### JURISDICTION AND VENUE

1.      This is a tort and civil rights action that is brought in part under 42 U.S.C. §§ 1983 ("Section 1983") and 1988, and the Fourth Amendment to the United States Constitution. Plaintiff seeks redress for violations of the constitutional and civil rights of the decedent, Lee Witschi, along with the wrongful death of Lee Witschi.

2.      The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and § 1343(3) as the controversy arises under the United States Constitution and under 28 U.S.C. § 1983 because it involves a deprivation of rights, privileges or immunities secured by the Constitution under color of a statute, ordinance, regulation, custom or usage of any state.  With respect to these claims, the Court has authority to award attorney fees under 42 U.S.C. § 1988(b) and expert witness fees as a part of attorney fees under 42 U.S.C. § 1988(c).

3.      The claims against The Evangelical Lutheran Good Samaritan Society d/b/a Good Samaritan Society – Minneapolis ("Defendant Nursing Home") arise under the Kansas Wrongful Death Act, *K.S.A. § 60-1901, et. seq.*, and other causes of action for injury to a person that survive death under statutes governing survival and abatement of actions found at *K.S.A. § 60-1801, et. seq.*  Plaintiff invokes the supplemental jurisdiction of the Court under 28 U.S.C. § 2201 and § 2202 to hear and adjudicate these state law claims against Defendant Nursing Home.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . .* .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 3

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and § 1391(c)(2) because all Defendants are entities with the capacity to sue in their common names under applicable law and are residents of or conduct business in this judicial district, where they are subject to the Court's personal jurisdiction with respect to the causes of action described in this Complaint.    Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims described in this Third Amended Complaint occurred in this judicial district.

## THE PARTIES

### *Plaintiff Carol A. Kellogg, Individually and as sole Heir-at-Law and Administrator of the Estate of Lee J. Witschi, deceased*

5.      Plaintiff is a natural person who resides, and has at all times relevant to the events described in the Third Amended Complaint resided, in Salina, Saline County, Kansas.    Plaintiff is the daughter and only living heir-at-law of Lee J. Witschi, deceased.

6.      Lee Witschi died on May 19, 2016 at Defendant Nursing Home.    For many years before his retirement, Lee ran his own business, which he operated from his home in Salina, Kansas, called Good House Keeping Appliance Service. He also served as a Bishop of the Church of Jesus Christ of Latter Day Saints.

7.      Plaintiff was appointed Administrator of her late father's Estate under Letters of Administration issued by Saline County District Court Judge Paul Hickman on or about March 6,

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . ................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 4

2017, in Case No. 2017-PR-000019-DE, captioned *In the Matter of the Estate of Lee J. Witschi, Deceased.*

### Sheriff Keith Coleman, in his Official Capacity as Sheriff of Ottawa County, Kansas

8.      Sheriff Keith Coleman ("Defendant Sheriff" or "Sheriff Keith Coleman"), a resident and citizen of the United States who, upon information and belief, resides in Ottawa County, Kansas, is sued in his official capacity and as the legal representative of the Ottawa County, Kansas Sheriff's Department ("Sheriff's Department" or "Ottawa County, Kansas Sheriff's Department"), as if the Sheriff's Department was being sued itself.

9.      Sheriff Keith Coleman, at all relevant times herein, was and continues to be the Sheriff for Ottawa County, Kansas and, as in this case, is the proper party to be sued for the official actions of the Ottawa County, Kansas Sheriff's Department.

10.      The Ottawa County, Kansas Sheriff's Department is located in the Ottawa County Sheriff's Department / Detention Center building located at 312 N. Ottawa, Minneapolis, Kansas 67467.

11.      The purpose of the Ottawa County, Kansas Sheriff's Department, at all relevant times herein, was and continues to be to serve and protect the citizens of Ottawa County, Kansas 24 hours a day, 7 days a week.

12.      The officers and personnel of the Ottawa County, Kansas Sheriff's Department work to enforce the law, respond to emergencies, calls for assistance, crime scenes, accidents,

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 5

and other incidents in and for the citizens of Ottawa County, Kansas, and are required to conduct themselves in accordance with established laws, regulations, protocols, policies, and standards of care, among other duties that are established by both the Sheriff's Department and/or The Board of County Commissioners of the County of Ottawa.

13.     Defendant Sheriff, at all relevant times herein, was and continues to act as a branch of the Ottawa County, Kansas government.

14.     Defendant Sheriff, at all relevant times herein, acted and continues to act as a policymaker for Ottawa County, Kansas as it pertains to the Sheriff's Department and such actions by Defendant Sheriff represent official policy for Ottawa County, Kansas and are attributable to Ottawa County, Kansas.

15.     Defendant Sheriff, at all relevant times herein, was and continues to be charged with carrying out official duties on behalf of Ottawa County, Kansas that pertain to the Sheriff's Department.

16.     Defendant Sheriff, at all relevant times herein, was and continues to report on a weekly basis to the Ottawa County, Kansas Board of Commissioners, as reflected and posted on the website for Ottawa County, Kansas.

17.     Defendant Sheriff, at all relevant times herein, in the context of the claims that have been asserted against Defendant Sheriff in this case, was and continues to be a county official representing, binding, and acting on behalf of Ottawa County, Kansas.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 6

18.     The actions taken by Defendant Sheriff in his official capacity in this case were actions that Defendant Sheriff undertook on behalf of Ottawa County, Kansas and to which Ottawa County, Kansas can be bound in federal court under 42 U.S.C. § 1983.

19.     Consequently, Defendant Sheriff is not entitled to Eleventh Amendment immunity in his official capacity.

20.     Defendant Sheriff maintains a duty to hire, train, discipline, investigate and supervise the law enforcement personnel of the Sheriff's Department to include without limitation Defendant Thornton.  To this end, Defendant Sheriff, at all relevant times herein, consistent with K.S.A. § 19-805(a), was and continues to have a statutory responsibility for the misconduct of the undersheriff and the deputies in the Sheriff's Department.  Moreover, Defendant Sheriff, at all relevant times herein, as the Sheriff for Ottawa County, Kansas, consistent with K.S.A. § 19-805(b), was and continues to have a statutory responsibility for the training of the undersheriff, the deputies and any assistants in the Sheriff's Department.

21.     In addition, and notwithstanding its statutory duty, Defendant Sheriff voluntarily undertook and actively participated in the hiring, training, discipline, investigatory work and supervision of the law enforcement personnel of the Sheriff's Department to include without limitation Defendant Thornton.

22.     Defendant Sheriff is sued directly under 42 U.S.C. § 1983 for the Sheriff's Department's own, and delegated, deliberately indifferent and unconstitutional decisions,

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................... *Case No. 6:18-CV-01061-JTM-JPO*
Page 7

policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures, which were moving forces in the constitutional violations and resulting injuries described herein.

## *Undersheriff Russell Thornton of Ottawa County, Kansas, both in his Official and Individual Capacity*

23.     Undersheriff Russell Thornton ("Defendant Thornton"), a resident and citizen of the United States who, upon information and belief, resides in Ottawa County, Kansas, is sued both in his individual and official capacity.

24.     Defendant Thornton, at all relevant times herein, was and continues to be the Undersheriff for Ottawa County, Kansas in the Sheriff's Department and offices at the Ottawa County Sheriff's Department.

25.     Defendant Thornton, at all relevant times herein, was and continues to be an employee of Ottawa County, Kansas and worked and continues to work in the Ottawa County Sheriff's Department.

26.     Defendant Thornton, at all relevant times herein, in the context of the claims that have been asserted against Defendant Thornton in this case, was and continues to be a county official representing, binding, and acting on behalf of the Sheriff's Department and Ottawa County, Kansas.

27.     The actions taken by Defendant Thornton in this case, both in his official and

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.. . .................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 8

individual capacity, were actions that Defendant Thornton undertook on behalf of Ottawa County, Kansas and to which Ottawa County, Kansas can be bound in federal court under 42 U.S.C. § 1983.

28.     Consequently, Defendant Thornton is not entitled to Eleventh Amendment immunity.

29.     Defendant Thornton, at all relevant times herein, acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of the State of Kansas, the Sheriff's Department, and/or Defendant County, in the course and scope of his duties and functions as an officer, agent, servant, and employee of the Sheriff's Department and Ottawa County, Kansas; acted for, and on behalf of, and with the power and authority vested in him by the Defendant Sheriff and Defendant County; and otherwise performed and engaged in conduct incidental to the performance of his lawful functions in the course of his duties.

### *The Board of County Commissioners of the County of Ottawa*

30.     The Board of County Commissioners of the County of Ottawa ("Defendant County"), consistent with K.S.A. § 19-105, is the legal entity, on behalf of Ottawa County, Kansas, that has the capacity to be sued.

31.     Defendant County, at all relevant times herein, is a body corporate and politic and is charged with the general powers as more fully set forth in K.S.A. § 19-101.

32.     Defendant County is the proper party to be sued for the claims against and that

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . ................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 9

pertain to the Ottawa County Sheriff's Department, in its official capacity. Defendant County, at all relevant times herein, is bound by the conduct of its various governmental departments to include without limitation the Ottawa County Sheriff's Department. As such, Defendant County maintains a duty to hire, train, discipline, investigate and supervise the law enforcement personnel of the Sheriff's Department to include without limitation Defendant Thornton. In addition, the statutory obligation of the Ottawa County Sheriff's Department, as set forth in K.S.A. § 19-805, is attributable to Defendant County and binds Defendant County. Moreover, Defendant County voluntarily undertook and did in fact actively participate in the hiring, training, discipline, investigatory work, and supervision of personnel that worked in the Sheriff's Department to include without limitation Defendant Thornton.

33. Defendant County is sued directly under 42 U.S.C. § 1983 for its own, and delegated, deliberately indifferent and unconstitutional decisions, policies, practices, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures, which were moving forces in the constitutional violations and resulting injuries described herein.

### *Frank Gent, Minneapolis, Kansas Police Chief, both in his Official and Individual Capacity*

34. Officer Frank Gent ("Defendant Gent"), a resident and citizen of the United States who, upon information and belief, resides in Ottawa County, Kansas, is sued both in his official and individual capacity.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society
d/b/a Good Samaritan Society В Minneapolis, et al. . . .................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 10

35.     Defendant Gent shares a close identity of interest with Defendant City of Minneapolis, Kansas as Defendant Gent is an employee and/or officer of the Minneapolis, Kansas Police Department. Defendant Gent offices and works at the Minneapolis, Kansas Police Department. Defendant Gent, at all times relevant hereto, was the Assistant Chief of Police for the Minneapolis, Kansas Police Department. Defendant Gent is currently the Chief of Police of the Minneapolis, Kansas Police Department.

### *William Carr, a Minneapolis, Kansas Police Officer, both in his Official and Individual Capacity*

36.     Officer William Carr ("Defendant Carr"), a resident and citizen of the United States who, upon information and belief, resides in Ottawa County, Kansas, is sued both in his official and individual capacity.

37.     Defendant Carr shares a close identity of interest with Defendant City of Minneapolis, Kansas as Defendant Carr is an employee and/or officer of the Minneapolis, Kansas Police Department. Defendant Carr offices and works at the Minneapolis, Kansas Police Department. Defendant Carr, at all times relevant hereto, was an officer with Minneapolis, Kansas Police Department.

### *The City of Minneapolis, Kansas*

38.     The City of Minneapolis, Kansas ("Defendant City") is a municipal corporation as defined by K.S.A. § 12-105a(a) and K.S.A. § 75-6102(b) and is organized under the laws and the

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 11

Constitution of the State of Kansas. It is an entity capable of suing and being sued.

39.     Defendant City, at all relevant times herein, was and continues to be authorized by law to maintain a police department which acts as its agent in law enforcement and for which the Defendant City is ultimately responsible ("Minneapolis Police Department").

40.     Defendant City maintains, funds, and operates the Minneapolis Police Department to develop, implement, and enforce certain laws, regulations, and protocols for the citizens and visitors to Defendant City.

41.     The Minneapolis Police Department's officers work in the Minneapolis, Kansas community to enforce the law, respond to emergencies, calls for assistance, crime scenes, accidents, and other incidents, and are required to conduct themselves in accordance with established laws, regulations, protocols, policies, and standards of care, among other duties, that are established by Defendant City and/or the Minneapolis Police Department.

42.     Defendant City assumes the risks incidental to the maintenance of the police force and the employment and/or actions of the police officers associated with the Minneapolis Police Department.

43.     Defendant City was, at all relevant times herein, the employer of Defendant Gent and Defendant Carr (collectively, "City Officers").

44.     The City Officers are and were, at all relevant times herein, duly appointed and acting officers, servants, employees, and agents of the Minneapolis Police Department, a

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . .................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 12

municipal agency of Defendant City.

45.     The City Officers, at all relevant times herein, were sworn law enforcement officers with the Minneapolis Police Department and were acting in their capacity as law enforcement officers employed by Defendant City and/or the Minneapolis Police Department.

46.     The City Officers, at all relevant times herein, acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of the State of Kansas, the Minneapolis Police Department, and Defendant City, in the course and scope of their respective duties and functions as officers, agents, servants, and employees of Defendant City and/or the Minneapolis Police Department; acted for, and on behalf of, and with the power and authority vested in them by Defendant City and/or the Minneapolis Police Department; and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their respective duties.

47.     Defendant City is sued directly under 42 U.S.C. § 1983 for its own, and delegated, deliberately indifferent and unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures, which were moving forces in the constitutional violations and resulting injuries described herein.

### *The Evangelical Lutheran Good Samaritan Society d/b/a Good Samaritan Society - Minneapolis*

48.     The Evangelical Lutheran Good Samaritan Society is the largest non-profit

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................... *Case No. 6:18-CV-01061-JTM-JPO*
Page 13

provider of senior care and services in the United States. Headquartered in Sioux Falls, South Dakota, it operates senior care facilities throughout the United States. Upon information and belief, it currently operates twenty-eight (28) senior care centers in Kansas. Some are skilled nursing facilities, others are assisted living facilities, and some involve home health care operations.

49.     The Evangelical Lutheran Good Samaritan Society d/b/a Good Samaritan Society – Minneapolis (as previously stated, "Defendant Nursing Home") is, and was at all times relevant to the events described herein, a skilled nursing facility owned and operated by The Evangelical Lutheran Good Samaritan Society and located at 815 North Rothsay Avenue, Minneapolis, Kansas.

50.     Since February 1, 1990, The Evangelical Lutheran Good Samaritan Society, 4800 W. 57th, P.O. Box 5038, Sioux Falls, South Dakota 57117-5038 has been the licensee for Defendant Nursing Home.

51.     At all times pertinent to the events described in this Third Amended Complaint, Defendant Nursing Home operated a 24-hour-a-day, sixty-four bed facility, seven days a week, for residents who, due to functional impairments, need skilled nursing care and special mental health services to compensate for activities of daily living limitations.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 14

## STATEMENT OF FACTS

### *Lee Witschi's Residency at Defendant Nursing Home*

52.     Lee Witschi was eighty-nine (89) years old (D.O.B. September 25, 1924) when he was admitted to Defendant Nursing Home as a resident.

53.     Lee Witschi's admission followed a four-day hospitalization at Salina Regional Health Center ("Salina Regional") in Salina, Kansas between November 8, 2013 and November 12, 2013.   Lee Witschi was hospitalized at Salina Regional for an evaluation of behavioral changes, memory loss, and other symptoms of possible dementia that Plaintiff had gradually begun to notice, which caused her to become concerned about her father's ability to continue to live independently.

54.     At the time of his admission to Salina Regional, Lee Witschi had not been seen by a physician in more than thirty (30) years because he had not needed one.   Other than his confusion, slightly elevated blood pressure, and some mild acid reflux disease, Lee Witschi was remarkably healthy.

55.     Following a full neurological work-up performed by Dr. Trent Davis, a Salina neurologist, Lee Witschi was diagnosed with a "slowly progressive senile dementia" of likely Alzheimer's type or "other behavioral dementia known to have behavioral disturbances as a feature of the disease."   Dr. Davis made note that, in his interactions with Lee Witschi, he found him to be "a very caring and sincere person who finds good in almost everyone."

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 15

56.     Dr. Davis also noted that Lee Witschi remained active and that his patient's primary concern about living in a skilled nursing facility or somewhere other than his own home was that, if others prepared his meals and otherwise took care of him, he might "get lazy and would not have enough [to do] to keep himself busy during the day." Dr. Davis commented that Lee Witschi would have to be persuaded that he had "earned the right to move to a place where he could enjoy the perks of his hard work and that there would be plenty of physical activity to keep him engaged."

57.     A care plan was developed for nursing home placement that would allow Lee Witschi to transition directly from Salina Regional to Defendant Nursing Home. Arrangements were made for the performance of an admission assessment by Defendant Nursing Home personnel, which was performed by the facility's employees and agents, Ruth Copple and Pam Black, on November 12, 2013 at Salina Regional.

58.     At the time of Lee Witschi's assessment, Pam Black was the Director of Defendant Nursing Home and Ruth Copple was responsible for social services. Both Pam Black and Ruth Copple were authorized by Defendant Nursing Home, and presumably properly trained and qualified, to make admission assessments for prospective residents on behalf of said Defendant Nursing Home.

59.     Following the admission assessment conducted by Pam Black and Ruth Copple and based upon their recommendation, Lee Witschi was accepted as a resident at Defendant

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society
d/b/a Good Samaritan Society B Minneapolis, et al. . . ................................... Case No. 6:18-CV-01061-JTM-JPO*
Page 16

Nursing Home, as soon as he "finalize[d]" the selection of a doctor and was seen by that doctor, which was accomplished on the same date.

60.  Lee Witschi's new doctor described Lee as very healthy, grossly oriented to person, place and time; hard of hearing and easily confused. The doctor prescribed Namenda, a prescription drug often used with Alzheimer's patients, which had been recommended by Dr. Davis and continued his prescription for Aricept, which was initially prescribed by Dr. Davis during Lee Witschi's hospitalization at Salina Regional between November 8 and November 12, 2013.

61.  Lee Witschi was, thereafter and on the same date, admitted to and became a resident of Defendant Nursing Home, and was transported to the facility by Plaintiff and her husband, Wendell Kellogg, who had accompanied him to the doctor as well.

62.  Lee Witschi remained a resident at Defendant Nursing Home until his date of death on May 19, 2016, all the while living on the memory care unit, known as "The Cove."

63.  Defendant Nursing Home, while Lee Witschi resided at said facility on "The Cove," promised prospective residents and their families, among other things, that its staff was specially trained to provide support and encourage meaningful activities and interactions for, and effective communications with, its memory care and other special needs residents. *Id.*

64.  Defendant Nursing Home's website touted that its "[p]rimary care staffing allows genuine relationships to build allowing an increased level of care and deep awareness of each

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . .................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 17

resident's needs."

65.     These and other representations were relied upon by Plaintiff as part of the decision-making process that went into her father's placement at Defendant Nursing Home in mid-November 2013.

### *The March 29, 2016 Taser Shooting and Surrounding Events*

66.     On March 29, 2016, at approximately 6:40 p.m., Defendant Gent received a phone call from the Ottawa County dispatcher (Cindy Hauck) advising Defendant Gent that Defendant Nursing Home wanted an officer to come to Defendant Nursing Home to assist with getting a resident into their van, so they could transport the resident to Salina Regional Health Center for further evaluation.    As it turns out, the resident was Lee Witschi.

67.     As a result of the call referenced in the preceding paragraph, at approximately 6:45 p.m., Defendant Gent and Defendant Carr went together to Defendant Nursing Home.

68.     Upon arrival to Defendant Nursing Home, Defendant Gent and Defendant Carr were informed by a staff member from Defendant Nursing Home that Lee Witschi had been in a confrontation with another nursing home resident earlier that day and that Defendant Nursing Home needed assistance to get Lee Witschi in Defendant Nursing Home's van so that he could be transported to Salina Regional.

69.     Defendant Gent and Defendant Carr were not told about the specifics of the confrontation, instead all they were told is that a confrontation had occurred.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 18

70.    Defendant Gent and Defendant Carr were told that Lee Witschi was in his 90s and did have Alzheimer's.

71.    About this same time, shortly after arriving to Defendant Nursing Home, Defendant Gent and Defendant Carr observed Lee Witschi in the dining room at Defendant Nursing Home displaying a calm demeanor.

72.    In fact, a certified nurse aid, by the name of Camrylanae Barnes, noted that while in the dining room "Lee was not a harm to anyone."

73.    At the insistence of the Defendant Nursing Home staff, while in the dining room, Defendant Gent and Defendant Carr made repeated attempts to verbally direct Lee Witschi to Defendant Nursing Home's van, so that he could be transferred to a doctor's appointment.   In response, Lee Witschi indicated, both verbally and through gestures, that he did not want to go to a doctor's appointment.

74.    Up to this point, Defendant Gent and Defendant Carr did not know the specifics of the alleged confrontation that had supposedly occurred between Lee Witschi and the other nursing home resident.

75.    The staff at Defendant Nursing Home continued to insist that Defendant Gent and Defendant Carr assist in getting Lee Witschi to Defendant Nursing Home's van so that he could be transported to Salina Regional for his non-emergent doctor's appointment.

76.    At this point, realizing that these attempts were not successful, Defendant Gent

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 19

radioed for assistance, and after a matter of minutes, Defendant Thornton arrived on the scene at

Defendant Nursing Home.

77. However, prior to Defendant Thornton's arrival, Lee Witschi left the dining room

at Defendant Nursing Home and moved to a reclining chair in the living room area where he was

able to watch television.

78. When Defendant Thornton arrived, Defendant Gent informed Defendant Thornton

that Lee Witschi did not want to go to the doctor's appointment.

79. Defendant Thornton, after arriving to Defendant Nursing Home, made several

unsuccessful attempts to convince Lee Witschi to go to Defendant Nursing Home's van.

80. Up to this point, the Defendant Nursing Home staff continued to insist that

Defendant Gent, Defendant Carr and Defendant Thornton get Lee Witschi to Defendant Nursing

Home's van so that he could be transported to Salina Regional for a non-emergent doctor's

appointment.

81. Defendant Gent informed the staff at Defendant Nursing Home that the officers

did not want to place their hands on Lee Witschi, but that may be the only way to get him to

Defendant Nursing Home's van.

82. Eventually, after being told by Defendant Gent, Defendant Carr and Defendant

Thornton to stand up, Lee Witschi asked each officer to back up. However, the officers did not

listen to Lee's request. Lee Witschi ultimately stood up out of his chair in the living area at

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 20

Defendant Nursing Home where he had been watching television and walked passed the officers. It was at this time, from short range, that Defendant Thornton pulled out his taser gun, yelled "taser," and shot Lee Witschi in the back with his taser gun ("The Taser Shooting").

83.     As a result, Lee Witschi screamed and fell face first to the ground with no assistance.    Lee landed on his head, bleeding from his right forehead and right eyebrow area.

84.     The prongs of the Taser sent electricity into the muscle fibers of Lee Witschi's back, causing the muscles to contract uncontrollably and immobilizing him.    As stated, Lee Witschi collapsed to the floor, which the officers knew or should have known would occur. Prior to the tasing, neither Defendant Gent, Defendant Carr, nor Defendant Thornton placed themselves in a position to break Lee's fall.    Thus, as a result of his fall, Lee Witschi sustained injury, including but not limited to a head injury.

85.     Thereafter, with Lee Witschi still on the floor, Defendant Gent, Defendant Carr and Defendant Thornton inexplicably and with excessive, unreasonable, brutal, and unnecessary force and in further violation of Lee Witschi's Fourth Amendment rights, participated in physically forcing his hands behind his back and then cuffed him, fracturing one of Lee's wrists.

86.     Although Lee Witschi repeatedly cried out in pain from his position on the floor, Defendant Gent, Defendant Carr and Defendant Thornton refused to loosen the cuffs.    Even when it became clear from his cries for help (i.e. "Call the police") that Lee Witschi never understood the officers were the "police" in the first place, Defendant Gent, Defendant Carr and

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 21

Defendant Thornton refused to loosen the cuffs and, in fact, placed Lee on a stretcher with his hands still secured behind his back and assisted in strapping him down.

87.     Michelle Husted, the Director of Nursing, at Defendant Nursing Home, ran to the officers immediately after The Taser Shooting and yelled "why did you do that! He's a resident."

88.     Regardless, and as stated *supra*, Defendant Gent, Defendant Carr and Defendant Thornton proceeded to restrain Lee and handcuffed him, as if he were a criminal, all the while Lee was yelling "no" and screaming out in pain.

89.     Shortly thereafter, Michelle Husted requested to Defendant Gent, Defendant Carr and Defendant Thornton that the handcuffs be removed from Lee Witschi. Defendant Gent, Defendant Carr and Defendant Thornton collectively refused to do so and simply explained that Lee Witschi "had been tased and he was secured."

90.     In addition, within minutes after The Taser Shooting, Defendant Nursing Home's administrator, Pam Black, told the officers collectively that they could have approached Lee in a different way, as he is a 90-year-old man who has Alzheimer's. In response, the officers collectively indicated to Ms. Black that it was "protocol."

91.     Following The Taser Shooting, Defendant Gent called EMS for assistance.

92.     While waiting for EMS to arrive at Defendant Nursing Home, Defendant Gent, Defendant Carr and Defendant Thornton were all on the floor restraining Lee.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 22

93.     EMS personnel, along with the officers secured Lee Witschi to a cot with straps so that he was fully restrained and Lee Witschi was then taken to the ambulance to be transported to his non-emergent doctor's appointment at Salina Regional.

94.     At no time on March 29, 2016, prior to Lee Witschi being transported to Salina Regional, were any family members or responsible parties of Lee Witschi contacted concerning Lee.   No staff from Defendant Nursing Home made any such attempt.   Also, neither Defendant Gent, Defendant Carr, nor Defendant Thornton made any such attempt.

95.     At no time on March 29, 2016, prior to Lee Witschi being shot with a taser gun and then being transported to Salina Regional, was any consideration given to postponing Lee's doctor's appointment to a later date.   No staff from Defendant Nursing Home gave any such consideration to postponing Lee's doctor's appointment to a later date.   Also, neither Defendant Gent, Defendant Carr, nor Defendant Thornton gave any such consideration to postponing Lee's doctor's appointment to a later date.

96.     At no time on March 29, 2016, prior to Lee Witschi being transported to Salina Regional, did staff at Defendant Nursing Home manage Lee's Witschi's condition and behavioral concerns appropriately.   The staff at Defendant Nursing Home did not take control of the situation and simply stood idle as Defendant Gent, Defendant Carr, and Defendant Thornton mismanaged the situation.

97.     At no time on March 29, 2016, prior to Lee Witschi being transported to Salina

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 23

Regional, did Defendant Gent, Defendant Carr, nor Defendant Thornton manage Lee's Witschi's condition and behavioral concerns appropriately. Neither Defendant Gent, Defendant Carr, nor Defendant Thornton secured the necessary information about Lee Witschi's health and medical concerns to appropriately manage and communicate with Lee on March 29, 2016. Neither Defendant Gent, Defendant Carr, nor Defendant Thornton sought the appropriate assistance from staff at Defendant Nursing Home to appropriately manage and communicate with Lee Witschi on March 29, 2016.

98. On March 29, 2016, Lee Witschi was given no alternative about going to the doctor. Defendant Gent, Defendant Carr, and Defendant Thornton took an "all-in" approach – that is, Lee Witschi was going to go to the doctor no matter what the circumstances. Defendant Nursing Home did nothing to stop or to prevent this "all-in" approach by Defendant Gent, Defendant Carr and Defendant Thornton.

99. Lee Witschi was repeatedly told by Defendant Gent, Defendant Carr, and Defendant Thornton at Defendant Nursing Home that he was going to be taken to the doctor forcibly and against his will if he did not submit to their demand that he get up from his chair and "walk" to the van that was ready to take him to the doctor.

100. Defendant Gent, Defendant Carr and Defendant Thornton repeatedly told Lee Witschi that his only option for ending the seizure was to go voluntarily with them to the doctor or to be physically forced to do so. Lee Witschi was given no choice but to comply or be taken

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 24

forcibly and against his will.    Defendant Nursing Home did nothing to stop this conduct.

101.    Defendant Gent, Defendant Carr and Defendant Thornton improperly, without justification and in violation of Lee Witschi's Fourth Amendment rights under the United States and Kansas Constitutions, seized Lee Witschi by restraining his freedom of movement and preventing him from disengagement.

102.    Defendant Gent, Defendant Carr and Defendant Thornton had no reasonable basis for a belief that Lee Witschi was contemporaneously engaged in criminal activity when they confronted him or that he was about to engage in criminal activity.    Lee Witschi was not a threat to them or others, and there was no reasonable or constitutional basis for detaining him in the first instance.    Lee Witschi was simply not willing to go to the doctor.

103.    However, instead of disengaging or finding other appropriate and workable solutions for Lee Witschi on March 29, 2016, Defendant Gent, Defendant Carr and Defendant Thornton continued to threaten Lee verbally, physically, and with their demeanor.

104.    The actions of Defendant Gent, Defendant Carr and Defendant Thornton constituted excessive force and a violation of Lee Witschi's Fourth Amendment rights and subjected him to and actually caused him to suffer significant injury.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . .................................Case No. 6:18-CV-01061-JTM-JPO*
Page 25

## CAUSES OF ACTION

### FIRST CLAIM: UNLAWFUL SEIZAURE AND USE OF EXCESSIVE FORCE
#### (vs. Defendant Thornton, In His Official and Individual Capacity)
#### (Deprivation of Rights Under the Fourth Amendment and Section 1983)

105.    Plaintiff Carol A. Kellogg, as the Administrator of the Estate of Lee J. Witschi,

deceased, re-alleges and incorporates by reference the allegations in each preceding paragraph as

if fully set forth herein.

106.    42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of
any state or territory or the District of Columbia subjects or causes to be subjected any
citizen of the United States or other person with the jurisdiction thereof to the deprivation
of any rights, privileges or immunities secured by the constitution and law shall be liable
to the party injured in an action at law, suit in equity, or other appropriate proceeding for
redress…

107.    Lee Witsch, prior to his death on May 19, 2016, was a citizen of the United States.

108.    Defendant Thornton is person for purposes of 42 U.S.C. § 1983.

109.    Defendant Thornton, at all times relevant herein, was acting under the color of

state law in his capacity as a police officer and undersheriff for the Ottawa County Sheriff's

Department and his acts or omissions were conducted within the scope of his official duties or

employment with the Ottawa County Sheriff's Department and/or Ottawa County, Kansas.

110.    At the time of the complained of events, Lee Witschi had a clearly established

constitutional right under the Fourth Amendment to be secure in his person from unreasonable

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 26

seizure through excessive force.

111.    Any reasonable police officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at the time.

112.    The actions and use of force by Defendant Thornton, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him and violated the Fourth Amendment rights of Lee Witschi.

113.    There were multiple occurrences where objectively unreasonable force was used by Defendant Thornton, including, but not limited to:

   a.    The violent and forceful seizure of Lee Witschi's person by Defendant Thornton which culminated with Defendant Thornton inexplicably shooting Lee Witschi with a taser gun in the back with no warning on March 29, 2016 and then unreasonably detaining him on the floor and placing Lee Witschi in handcuffs;

   b.    The continued rough treatment of Lee Witschi's person by Defendant Thornton on March 29, 2016, once Lee Witschi had been shot with a taser gun in the back with no warning by Defendant Thornton;

   c.    The acts of Defendant Thornton in restraining Lee Witschi on the ground at Defendant Nursing Home on March 29, 2016 after Defendant Thornton had shot Lee Witschi with a taser gun; and

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 27

        d.      The acts of Defendant Thornton in handcuffing Lee Witschi at Defendant Nursing Home on March 29, 2016 after Defendant Thornton had shot Lee Witschi with a taser gun with no warning.

114.   These acts were done without the aid of medical and/or nursing personnel and without appropriate medical and/or nursing support to prevent injury to Lee Witschi's person.

115.   These acts caused severe physical and emotional injury to Lee Witschi when he was shot by Defendant Thornton with a taser gun from short range in the back with no warning and then the additional acts that are set forth herein which followed the shooting exacerbated and caused additional injury.

116.   The force used was excessive and unreasonable, was done intentionally, willfully, maliciously, and with deliberate indifference and/or with reckless disregard to Lee Witschi's federally protected rights.

117.   The force used was without lawful justification or reason and was designed to and did cause specific and serious physical and emotional pain and suffering to Lee Witschi.

118.   Defendant Thornton was not attempting to arrest Lee Witschi.

119.   Defendant Thornton had no probable cause, nor did Defendant Thornton have reasonable suspicion that Lee Witschi had committed a crime.  In fact, Defendant Thornton knew that Lee Witschi had not committed a crime.

120.   Defendant Thornton did not take reasonable steps to protect and/or prevent Lee

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 28

Witschi from the objectively unreasonable and excessive force.

121.   Defendant Thornton violated Lee Witschi's rights as guaranteed under Section 1983, and the Fourth Amendment to the United States Constitution, including the right to be free from an unreasonable seizure of his person and the right to be free from the use of excessive, unreasonable, and unjustified force.

122.   As a direct and proximate result of the foregoing, Lee Witschi suffered great physical harm and emotional pain and suffering, was deprived of his liberty, and was otherwise damaged or injured.

WHEREFORE, Plaintiff Carol A. Kellogg, as Administrator of the Estate of Lee J. Witschi, deceased, requests judgment against Defendant Thornton, in both his official and individual capacity; compensatory damages in an amount to be determined by a jury; punitive damages in an amount that is determined to be fair and reasonable; costs and interest and attorney's fees; and other and further relief as this Court may deem just and proper.

### SECOND CLAIM: UNLAWFUL SEIZURE AND USE OF EXCESSIVE FORCE
### (vs. Defendant Gent, In His Official and Individual Capacity)
### (Deprivation of Rights Under the Fourth Amendment and Section 1983)

123.   Plaintiff Carol A. Kellogg, as the Administrator of the Estate of Lee J. Witschi, deceased, re-alleges and incorporates by reference the allegations in each preceding paragraph as if fully set forth herein.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 29

124.    42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

125.    Lee Witschi, prior to his death on May 19, 2016, was a citizen of the United States.

126.    Defendant Gent is a person for purposes of 42 U.S.C. § 1983.

127.    Defendant Gent, at all times relevant herein, was acting under the color of state law in his capacity as a police officer for the Minneapolis Police Department and his acts or omissions were conducted within the scope of his official duties or employment with the Minneapolis Police Department and/or Defendant City.

128.    At the time of the complained of events, Lee Witschi had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

129.    Any reasonable police officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at the time.

130.    The actions and use of force by Defendant Gent, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him and violated the

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . ..................................* Case No. 6:18-CV-01061-JTM-JPO
Page 30

Fourth Amendment rights of Lee Witschi.

131.    There were multiple occurrences where objectively unreasonable force was used by Defendant Gent, including, but not limited to:

   a.      The violent and forceful seizure of Lee Witschi's person by Defendant Gent which culminated with Defendant Thornton inexplicably shooting Lee Witschi with a taser gun in the back with no warning on March 29, 2016 and then with Defendant Gent unreasonably detaining him on the floor and placing Lee Witschi in handcuffs;

   b.      The continued rough treatment of Lee Witschi's person by Defendant Gent on March 29, 2016, once Lee Witschi had been shot with a taser gun in the back with no warning by Defendant Thornton;

   c.      The acts of Defendant Gent in restraining Lee Witschi on the ground at Defendant Nursing Home on March 29, 2016 after Defendant Thornton had shot Lee Witschi with a taser gun; and

   d.      The acts of Defendant Gent in handcuffing Lee Witschi at Defendant Nursing Home on March 29, 2016 after Defendant Thornton had shot Lee Witschi with a taser gun with no warning.

132.    These acts were done without the aid of medical and/or nursing personnel and without appropriate medical and/or nursing support to prevent injury to Lee Witschi's person.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society
d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 31

133.    These acts caused severe physical and emotional injury to Lee Witschi.

134.    The forced used was excessive and unreasonable, was done intentionally, willfully, maliciously, and with deliberate indifference and/or with reckless disregard to Lee Witschi's federally protected rights.

135.    The force used was without lawful justification or reason and was designed to and did cause specific and serious physical and emotional pain and suffering to Lee Witschi.

136.    Defendant Gent was not attempting to arrest Lee Witschi.

137.    Defendant Gent had no probable cause, nor did Defendant Gent have reasonable suspicion that Lee Witschi had committed a crime.    In fact, Defendant Gent knew that Lee Witschi had not committed a crime.

138.    Defendant Gent did not take reasonable steps to protect and/or prevent Lee Witschi from the objectively unreasonable and excessive force.

139.    Defendant Gent violated Lee Witschi's rights as guaranteed under Section 1983, and the Fourth Amendment to the United States Constitution, including the right to be free from an unreasonable seizure of his person and the right to be free from the use of excessive, unreasonable, and unjustified force.

140.    As a direct and proximate result of the foregoing, Lee Witschi suffered great physical harm and emotional pain and suffering, was deprived of his liberty, and was otherwise damaged or injured.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 32

WHEREFORE, Plaintiff Carol A. Kellogg, as Administrator of the Estate of Lee J. Witschi, deceased, requests judgment against Defendant Gent, in both his official and individual capacity; compensatory damages in an amount to be determined by a jury; punitive damages in an amount that is determined to be fair and reasonable; costs and interest and attorney's fees; and other and further relief as this Court may deem just and proper.

### THIRD CLAIM: UNLAWFUL SEIZURE AND USE OF EXCESSIVE FORCE
### (vs. Defendant Carr, In His Official and Individual Capacity)
### (Deprivation of Rights Under the Fourth Amendment and Section 1983)

141.     Plaintiff Carol A. Kellogg, as the Administrator of the Estate of Lee J. Witschi, deceased, re-alleges and incorporates by reference the allegations in each preceding paragraph as if fully set forth herein.

142.     42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

143.     Lee Witsch, prior to his death on May 19, 2016, was a citizen of the United States.

144.     Defendant Carr is a person for purposes of 42 U.S.C. § 1983.

145.     Defendant Carr, at all times relevant herein, was acting under the color of state law in his capacity as a police officer for the Minneapolis Police Department and his acts or

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................... *Case No. 6:18-CV-01061-JTM-JPO*
Page 33

omissions were conducted within the scope of his official duties or employment with the Minneapolis Police Department and/or Defendant City.

146.   At the time of the complained of events, Lee Witschi had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

147.   Any reasonable police officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at the time.

148.   The actions and use of force by Defendant Carr, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him and violated the Fourth Amendment rights of Lee Witschi.

149.   There were multiple occurrences where objectively unreasonable force was used by Defendant Carr, including, but not limited to:

      a.      The violent and forceful seizure of Lee Witschi's person by Defendant Carr which culminated with Defendant Thornton inexplicably shooting Lee Witschi with a taser gun in the back with no warning on March 29, 2016 and then with Defendant Carr unreasonably detaining him on the floor and placing Lee Witschi in handcuffs;

      b.      The continued rough treatment of Lee Witschi's person by Defendant Carr on March 29, 2016, once Lee Witschi had been shot with a taser gun in the

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 34

back with no warning by Defendant Thornton;

c.   The acts of Defendant Carr in restraining Lee Witschi on the ground at Defendant Nursing Home on March 29, 2016 after Defendant Thornton had shot Lee Witschi with a taser gun; and

d.   The acts of Defendant Carr in handcuffing Lee Witschi at Defendant Nursing Home on March 29, 2016 after Defendant Thornton had shot Lee Witschi with a taser gun with no warning.

150.   These acts were done without the aid of medical and/or nursing personnel and without appropriate medical and/or nursing support to prevent injury to Lee Witschi's person.

151.   These acts caused severe physical and emotional injury to Lee Witschi.

152.   The force used was excessive and unreasonable, was done intentionally, willfully, maliciously, and with deliberate indifference and/or with reckless disregard to Lee Witschi's federally protected rights.

153.   The force used was without lawful justification or reason and was designed to and did cause specific and serious physical and emotional pain and suffering to Lee Witschi.

154.   Defendant Carr was not attempting to arrest Lee Witschi.

155.   Defendant Carr had no probable cause, nor did Defendant Carr have reasonable suspicion that Lee Witschi had committed a crime.   In fact, Defendant Carr knew that Lee Witschi had not committed a crime.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . .................................* Case No. 6:18-CV-01061-JTM-JPO
Page 35

156.     Defendant Carr did not take reasonable steps to protect and/or prevent Lee Witschi from the objectively unreasonable and excessive force.

157.     Defendant Carr violated Lee Witschi's rights as guaranteed under Section 1983, and the Fourth Amendment to the United States Constitution, including the right to be free from an unreasonable seizure of his person and the right to be free from the use of excessive, unreasonable, and unjustified force.

158.     As a direct and proximate result of the foregoing, Lee Witschi suffered great physical harm and emotional pain and suffering, was deprived of his liberty, and was otherwise damaged or injured.

WHEREFORE, Plaintiff Carol A. Kellogg, as Administrator of the Estate of Lee J. Witschi, deceased, requests judgment against Defendant Carr, in his official and individual capacity; compensatory damages in an amount to be determined by a jury; punitive damages in an amount that is determined to be fair and reasonable; costs and interest and attorney's fees; and other and further relief as this Court may deem just and proper.

### FOURTH CLAIM: MUNICIPAL LIABILITY
### UNLAWFUL SEIZAURE AND USE OF EXCESSIVE FORCE
### (vs. Defendant Sheriff, In His Official Capacity)
### (Deprivation of Rights Under the Fourth Amendment and Section 1983)

159.     Plaintiff Carol A. Kellogg, as the Administrator of the Estate of Lee J. Witschi, deceased, re-alleges and incorporates by reference the allegations set forth in each preceding

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society
d/b/a Good Samaritan Society B Minneapolis, et al. . . ................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 36

paragraph as if fully set forth herein.

160.    42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

161.    Lee Witsch, prior to his death on May 19, 2016, was a citizen of the United States.

162.    Defendant Sheriff is a person for purposes of 42 U.S.C. § 1983.

163.    Defendant Sheriff had in effect, both before and at the time of the events alleged in this Complaint, policies, practices, and customs which operated to deprive Lee Witschi of his constitutional rights.

164.    Defendant Sheriff is accountable under 42 U.S.C. § 1983 because it established policies, practices, and customs that condoned and fostered the unconstitutional conduct of Defendant Thornton and which served as a moving force behind the constitutional violations alleged herein.    At a minimum, Defendant Sheriff was deliberately indifferent to such constitutional violations.

165.    Defendant Sheriff maintains a duty to hire, train, discipline, investigate and supervise the law enforcement personnel of the Sheriff's Department to include without limitation Defendant Thornton.    In addition, and separate and apart from the foregoing,

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . ..................................* Case No. 6:18-CV-01061-JTM-JPO
Page 37

Defendant Sheriff voluntarily undertook and actively participated in the hiring, training, discipline, investigatory work and supervision of the law enforcement personnel of the Sheriff's Department to include without limitation Defendant Thornton.

166.    Defendant Sheriff, at all relevant times herein, had policies, practices and customs that condoned or fostered the following:

      a.    Using unreasonable and excessive force to seize individuals;

      b.    Using unreasonable and excessive force to restrain and/or detain individuals;

      c.    Using a taser gun on elderly, nursing home residents, such as Lee Witschi, who have Alzheimer's and/or dementia;

      d.    Using handcuffs on elderly, nursing home residents, such as Lee Witschi, who have Alzheimer's and/or dementia;

      e.    Ignoring and/or not utilizing medical and/or nursing information and assistance when managing behavioral concerns of elderly, nursing home residents, such as Lee Witschi;

      f.    Inappropriately managing and/or responding to the needs and/or behavioral concerns of elderly, nursing home residents;

      g.    Permitting individuals, such as Defendant Thornton, to continue to work in the Ottawa County Sheriff's Department despite violating individuals'

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . .................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 38

constitutional rights;

h. Inappropriate and unlawful seizures; or

i. The use of excessive force.

167. Upon information and belief, Defendant Sheriff, at all relevant times herein, had no policies or training programs specifying:

a. How to manage and address behavioral concerns of elderly, nursing home residents;

b. How to manage and address behavioral concerns of persons with Alzheimer's and/or dementia;

c. Discussing and/or identifying the behavioral concerns and/or behavioral tendencies that are associated with elderly, nursing home residents;

d. Discussing and/or identifying the behavioral concerns and/or behavioral tendencies that are associated with persons that have Alzheimer's and/or dementia;

e. Discussing and/or identifying the reasonable use of taser guns with the elderly and/or the reasonable use of taser guns with persons that reside in a nursing home and/or the reasonable use of taser guns with persons that have Alzheimer's and/or dementia;

f. Discussing and/or identifying the reasonable use of a taser gun on persons

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . ..................................* Case No. 6:18-CV-01061-JTM-JPO
Page 39

generally;

g.    Discussing and/or identifying the reasonable use of force upon elderly persons and/or upon persons that reside in a nursing home and/or upon persons that have Alzheimer's and/or dementia;

h.    Discussing and/or identifying the use of a reasonable restraint upon elderly persons and/or upon persons that reside in a nursing home and/or upon persons that have Alzheimer's and/or dementia;

i.    Discussing and/or identifying how to respond to a call to assist at a nursing home or a long-term care facility;

j.    The use of reasonable force in a search, seizure, or detainment; or

k.    The appropriate circumstances to conduct a search, seizure, or detainment.

168.    To the extent that Defendant Sheriff, at all relevant times herein, had policies and/or training programs concerning the subject matters identified in the preceding paragraph, Defendant Sheriff had a practice and custom of disregarding those policies and/or training programs.

169.    Defendant Sheriff failed to train Defendant Thornton on the following subject matters: (a) how to manage and address behavioral concerns of elderly, nursing home residents; (b) how to manage and address behavioral concerns of persons with Alzheimer's and/or dementia; (c) the behavioral concerns and/or behavioral tendencies that are associated with

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . ................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 40

elderly, nursing home residents; (d) the behavioral concerns and/or behavioral tendencies that are associated with persons that have Alzheimer's and/or dementia; (e) the reasonable use of taser guns with the elderly and/or the reasonable use of taser guns with persons that reside in a nursing home and/ or the reasonable use of taser guns with persons that have Alzheimer's and/or dementia; (f) the reasonable use of a taser gun on persons generally; (g) the reasonable use of force upon elderly persons and/or upon persons that reside in a nursing home and/or upon persons that have Alzheimer's and/or dementia; (h) the use of a reasonable restraint upon elderly persons and/or upon persons that reside in a nursing home and/or upon persons that have Alzheimer's and/or dementia; (i) how to respond to a call to assist at a nursing home or a long-term care facility; (j) the use of reasonable force in a search, seizure, or detainment; or (k) the appropriate circumstances to conduct a search, seizure, or detainment.

170.    In addition, Defendant Sheriff failed to supervise, investigate, and discipline the officers in the Sheriff's Department to include, but not be limited to Defendant Thornton, with respect to the violations of individuals' constitutional rights, including with respect to improper seizures, improper investigatory detentions, arrests, use of force, and the handling of individuals and detainees suffering from or complaining of injuries or medical conditions.

171.    The investigation performed by Defendant Sheriff concerning the injuries inflicted on Lee Witschi and the handling of Lee Witschi was minimal, inadequate, and was done to shield Defendant Thornton and Defendant Sheriff from liability, and not to evaluate the conduct of

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................... *Case No. 6:18-CV-01061-JTM-JPO*
Page 41

Defendant Thornton, nor to prevent abusive or improper conduct, nor to reform the policies, customs, practices of the Sheriff's Department, nor to reform the hiring, supervision or training of the Sheriff's Department.

172.    The failure to perform a timely or adequate investigation is a part of the custom, practice, and policies of the Sheriff's Department, and is a moving force behind a failure to protect against constitutional violations committed by Defendant Sheriff.

173.    Defendant Sheriff is vested with the authority to train, supervise, discipline, investigate and otherwise control the officers of the Sheriff's Department and additionally, separate and apart from the foregoing, Defendant Sheriff has voluntarily undertaken and actively participated in the training, supervision, discipline, investigatory work and control of the officers of the Sheriff's Department.  Defendant Sheriff has failed to change its inadequate policies, practices, customs, and usages of the Sheriff's Department asserted herein, and has failed to train, supervise, discipline, investigate and control the officers of the Sheriff's Department in a manner calculated to remedy deviance within the Sheriff's Department, including failing to act in the face of transgressions of which Defendant Sheriff knew or should have known.

174.    Defendant Sheriff has the power and responsibility to prevent the existence of the policies, customs, and practices as described in this Fourth Claim of the Third Amended Complaint and has failed and refused to do so, and has therefore been and continues to be deliberately indifferent to the rights of citizens with whom officers from the Sheriff's

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society
d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 42

Department, to include without limitation Defendant Thornton, come in contact.

175.    As a direct and proximate result of the foregoing, Lee Witschi suffered great physical harm and emotional pain and suffering, was deprived of his liberty, and was otherwise damaged or injured.

WHEREFORE, Plaintiff Carol A. Kellogg, as Administrator of the Estate of Lee J. Witschi, deceased, requests judgment against Defendant Sheriff, in his official capacity; compensatory damages in an amount to be determined by a jury; punitive damages in an amount that is determined to be fair and reasonable; costs and interest and attorney's fees; and other and further relief as this Court may deem just and proper.

### FIFTH CLAIM: MUNICIPAL LIABILITY
### UNLAWFUL SEIZAURE AND USE OF EXCESSIVE FORCE
### (vs. Defendant County, In Its Official Capacity)
### (Deprivation of Rights Under the Fourth Amendment and Section 1983)

176.    Plaintiff Carol A. Kellogg, as the Administrator of the Estate of Lee J. Witschi, deceased, re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

177.    42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . .................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 43

178.    Lee Witschi, prior to his death on May 19, 2016, was a citizen of the United States.

179.    Defendant County is a person for purposes of 42 U.S.C. § 1983.

180.    Defendant County had in effect, both before and at the time of the events alleged in this Complaint, policies, practices, and customs which operated to deprive Lee Witschi of his constitutional rights.    205.    Defendant County is accountable under 42 U.S.C. § 1983 because it established policies, practices, and customs that condoned and fostered the unconstitutional conduct of Defendant Thornton and which served as a moving force behind the constitutional violations alleged herein. At a minimum, Defendant County was deliberately indifferent to such constitutional violations.

181.    Defendant County maintains a duty to hire, train, discipline, investigate and supervise the law enforcement personnel of the Sheriff's Department to include without limitation Defendant Thornton.    In addition, and separate and apart from the foregoing, Defendant County voluntarily undertook and actively participated in the hiring, training, discipline, investigatory work and supervision of the law enforcement personnel of the Sheriff's Department to include without limitation Defendant Thornton.

182.    Defendant County, at all relevant times herein, had policies, practices and customs that condoned or fostered the following:

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . ..................................* Case No. 6:18-CV-01061-JTM-JPO
Page 44

a.     Using unreasonable and excessive force to seize individuals;

b.     Using unreasonable and excessive force to restrain and/or detain individuals;

c.     Using a taser gun on elderly, nursing home residents, such as Lee Witschi, who have Alzheimer's and/or dementia;

d.     Using handcuffs on elderly, nursing home residents, such as Lee Witschi, who have Alzheimer's and/or dementia;

e.     Ignoring and/or not utilizing medical and/or nursing information and assistance when managing behavioral concerns of elderly, nursing home residents, such as Lee Witschi;

f.     Inappropriately managing and/or responding to the needs and/or behavioral concerns of elderly, nursing home residents;

g.     Permitting individuals, such as Defendant Thornton, to continue to work in the Ottawa County Sheriff's Department despite violating individuals' constitutional rights;

g.     Inappropriate and unlawful seizures; or

h.     The excessive use of force.

183.     Upon information and belief, Defendant County, at all relevant times herein, had no policies or training programs specifying:

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 45

a.  How to manage and address behavioral concerns of elderly, nursing home residents;

b.  How to manage and address behavioral concerns of persons with Alzheimer's and/or dementia;

c.  Discussing and/or identifying the behavioral concerns and/or behavioral tendencies that are associated with elderly, nursing home residents;

d.  Discussing and/or identifying the behavioral concerns and/or behavioral tendencies that are associated with persons that have Alzheimer's and/or dementia;

e.  Discussing and/or identifying the reasonable use of taser guns with the elderly and/or the reasonable use of taser guns with persons that reside in a nursing home and/or the reasonable use of taser guns with persons that have Alzheimer's and/or dementia;

f.  Discussing and/or identifying the reasonable use of a taser gun on persons generally;

g.  Discussing and/or identifying the reasonable use of force upon elderly persons and/or upon persons that reside in a nursing home and/or upon persons that have Alzheimer's and/or dementia;

h.  Discussing and/or identifying the use of a reasonable restraint upon elderly

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . ..................................* Case No. *6:18-CV-01061-JTM-JPO*
Page 46

persons and/or upon persons that reside in a nursing home and/or upon persons that have Alzheimer's and/or dementia; or

i.      Discussing and/or identifying how to respond to a call to assist at a nursing home or a long-term care facility;

j.      The use of reasonable force in a search, seizure, or detainment; or

k.      The appropriate circumstances to conduct a search, seizure, or detainment.

184.    To the extent that Defendant County, at all relevant times herein, had policies and/or training programs concerning the subject matters identified in the preceding paragraph, Defendant County had a practice and custom of disregarding those policies and/or training programs.

185.    Defendant County failed to train Defendant Thornton on the following subject matters: (a) how to manage and address behavioral concerns of elderly, nursing home residents; (b) how to manage and address behavioral concerns of persons with Alzheimer's and/or dementia; (c) the behavioral concerns and/or behavioral tendencies that are associated with elderly, nursing home residents; (d) the behavioral concerns and/or behavioral tendencies that are associated with persons that have Alzheimer's and/or dementia; (e) the reasonable use of taser guns with the elderly and/or the reasonable use of taser guns with persons that reside in a nursing home and/ or the reasonable use of taser guns with persons that have Alzheimer's and/or dementia; (f) the reasonable use of a taser gun on persons generally; (g) the reasonable use of

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society
d/b/a Good Samaritan Society B Minneapolis, et al. . . .................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 47

force upon elderly persons and/or upon persons that reside in a nursing home and/or upon persons that have Alzheimer's and/or dementia; (h) the use of a reasonable restraint upon elderly persons and/or upon persons that reside in a nursing home and/or upon persons that have Alzheimer's and/or dementia; (i) how to respond to a call to assist at a nursing home or a long-term care facility; (j) the use of reasonable force in a search, seizure, or detainment; or (k) the appropriate circumstances to conduct a search, seizure, or detainment.

186.    In addition, Defendant County failed to supervise, investigate, and discipline the officers in the Sheriff's Department to include, but not be limited to Defendant Thornton, with respect to the violations of individuals' constitutional rights, including with respect to improper seizures, improper investigatory detentions, arrests, use of force, and the handling of individuals and detainees suffering from or complaining of injuries or medical conditions.

187.    The investigation performed by Defendant County concerning the injuries inflicted on Lee Witschi and the handling of Lee Witschi was minimal, inadequate, and was done to shield Defendant Thornton and Defendant County from liability, and not to evaluate the conduct of Defendant Thornton, nor to prevent abusive or improper conduct, nor to reform the policies, customs, practices of the Sheriff's Department or Defendant County, nor to reform the hiring, supervision or training of the Sheriff's Department or Defendant County.

188.    The failure to perform a timely or adequate investigation is a part of the custom, practice, and policies of Defendant County, and is a moving force behind a failure to protect

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . ................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 48

against constitutional violations committed by Defendant County.

189.    Defendant County has voluntarily undertaken and actively participated in the training, supervision, discipline, investigation and control of Defendant Sheriff and the officers of the Sheriff's Department.   Defendant County has failed to change its inadequate policies, practices, customs, and usages as asserted herein, and has failed to train, supervise, discipline, investigate and control the officers of the Sheriff's Department in a manner calculated to remedy deviance within the Sheriff's Department, including failing to act in the face of transgressions of which Defendant County knew or should have known.

190.    Defendant County has the power and responsibility to prevent the existence of the policies, customs, and practices as described in this Fifth Claim of the Third Amended Complaint and has failed and refused to do so, and has therefore been and continues to be deliberately indifferent to the rights of citizens with whom officers from the Sheriff's Department and Defendant County, to include without limitation Defendant Thornton, come in contact.

191.    As a direct and proximate result of the foregoing, Lee Witschi suffered great physical harm and emotional pain and suffering, was deprived of his liberty, and was otherwise damaged or injured.

WHEREFORE, Plaintiff Carol A. Kellogg, as Administrator of the Estate of Lee J. Witschi, deceased, requests judgment against Defendant County, in its official capacity; compensatory damages in an amount to be determined by a jury; punitive damages in an amount

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 49

that is determined to be fair and reasonable; costs and interest and attorney's fees; and other and

further relief as this Court may deem just and proper.

### SIXTH CLAIM: MUNICIPAL LIABILITY
### UNLAWFUL SEIZURE AND USE OF EXCESSIVE FORCE
### (vs. Defendant City, In Its Official Capacity)
### (Deprivation of Rights Under the Fourth Amendment and Section 1983)

192.    Plaintiff Carol A. Kellogg, as the Administrator of the Estate of Lee J. Witschi,

deceased, re-alleges and incorporates by reference the allegations set forth in each preceding

paragraph as if fully set forth herein.

193.    42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of
any state or territory or the District of Columbia subjects or causes to be subjected any
citizen of the United States or other person with the jurisdiction thereof to the deprivation
of any rights, privileges or immunities secured by the constitution and law shall be liable
to the party injured in an action at law, suit in equity, or other appropriate proceeding for
redress…

194.    Lee Witsch, prior to his death on May 19, 2016, was a citizen of the United States.

195.    Defendant City is a person for purposes of 42 U.S.C. § 1983.

196.    Defendant City had in effect, both before and at the time of the events alleged in

this Complaint, policies, practices, and customs which operated to deprive Lee Witschi of his

constitutional rights.

197.    Defendant City is accountable under 42 U.S.C. § 1983 because it established

policies, practices, and customs that condoned and fostered the unconstitutional conduct of

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . .................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 50

Defendant Gent and Defendant Carr and which served as a moving force behind the constitutional violations alleged herein. At a minimum, Defendant City was deliberately indifferent to such constitutional violations.

198. Defendant City, at all relevant times herein, had policies, practices and customs that condoned or fostered the following:

      a.      Using unreasonable and excessive force to seize individuals;

      b.      Using unreasonable and excessive force to restrain and/or detain individuals;

      c.      Using a taser gun on elderly, nursing home residents, such as Lee Witschi, who have Alzheimer's and/or dementia;

      d.      Using handcuffs on elderly, nursing home residents, such as Lee Witschi, who have Alzheimer's and/or dementia;

      e.      Ignoring and/or not utilizing medical and/or nursing information and assistance when managing behavioral concerns of elderly, nursing home residents, such as Lee Witschi;

      f.      Inappropriately managing and/or responding to the needs and/or behavioral concerns of elderly, nursing home residents;

      g.      Permitting individuals, such as Defendant Gent and Defendant Carr, to continue to work in the Minneapolis Police Department despite violating

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . ................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 51

individuals' constitutional rights;

h.      Inappropriate and unlawful seizures; or

i.      The use of excessive force.

199.    Upon information and belief, Defendant City, at all relevant times herein, had no policies or training programs specifying:

a.      How to manage and address behavioral concerns of elderly, nursing home residents;

b.      How to manage and address behavioral concerns of persons with Alzheimer's and/or dementia;

c.      Discussing and/or identifying the behavioral concerns and/or behavioral tendencies that are associated with elderly, nursing home residents;

d.      Discussing and/or identifying the behavioral concerns and/or behavioral tendencies that are associated with persons that have Alzheimer's and/or dementia;

e.      Discussing and/or identifying the reasonable use of taser guns with the elderly and/or the reasonable use of taser guns with persons that reside in a nursing home and/or the reasonable use of taser guns with persons that have Alzheimer's and/or dementia;

f.      Discussing and/or identifying the reasonable use of a taser gun on persons

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 52

generally;

g.    Discussing and/or identifying the reasonable use of force upon elderly persons and/or upon persons that reside in a nursing home and/or upon persons that have Alzheimer's and/or dementia;

h.    Discussing and/or identifying the use of a reasonable restraint upon elderly persons and/or upon persons that reside in a nursing home and/or upon persons that have Alzheimer's and/or dementia; or

i.    Discussing and/or identifying how to respond to a call to assist at a nursing home or a long-term care facility;

j.    The use of reasonable force in a search, seizure, or detainment; or

k.    The appropriate circumstances to conduct a search, seizure, or detainment.

200.    To the extent that Defendant City, at all relevant times herein, had policies and/or training programs concerning the subject matters identified in the preceding paragraph, Defendant City had a practice and custom of disregarding those policies and/or training programs.

201.    Defendant City failed to train Defendant Gent and Defendant Carr on the following subject matters: (a) how to manage and address behavioral concerns of elderly, nursing home residents; (b) how to manage and address behavioral concerns of persons with Alzheimer's and/or dementia; (c) the behavioral concerns and/or behavioral tendencies that are associated

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 53

with elderly, nursing home residents; (d) the behavioral concerns and/or behavioral tendencies that are associated with persons that have Alzheimer's and/or dementia; (e) the reasonable use of taser guns with the elderly and/or the reasonable use of taser guns with persons that reside in a nursing home and/ or the reasonable use of taser guns with persons that have Alzheimer's and/or dementia; (f) the reasonable use of a taser gun on persons generally; (g) the reasonable use of force upon elderly persons and/or upon persons that reside in a nursing home and/or upon persons that have Alzheimer's and/or dementia; (h) the use of a reasonable restraint upon elderly persons and/or upon persons that reside in a nursing home and/or upon persons that have Alzheimer's and/or dementia; (i) how to respond to a call to assist at a nursing home or a long-term care facility; (j) the use of reasonable force in a search, seizure, or detainment; or (k) the appropriate circumstances to conduct a search, seizure, or detainment.

202.    To the extent that Defendant City, at all relevant times herein, had policies concerning the hiring, discipline, supervision or termination of employees of the Minneapolis Police Department, to include without limitation Defendant Gent and Defendant Carr, Defendant City had a practice and custom of disregarding those policies and did so in the case of Defendant Gent and Defendant Carr.

203.    Defendant City failed to supervise, investigate, and discipline the officers in the Minneapolis Police Department to include, but not be limited to Defendant Gent and Defendant Carr, with respect to the violations of individuals' constitutional rights, including with respect to

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 54

improper seizures, improper investigatory detentions, arrests, use of force, and the handling of individuals and detainees suffering from or complaining of injuries or medical conditions.

204.  The investigation performed by Defendant City concerning the injuries inflicted on Lee Witschi and the handling of Lee Witschi was minimal, inadequate, and to the extent any such investigation was conducted, it was done to shield Defendant City, Defendant Gent and/or Defendant Carr from liability, and not to evaluate the conduct of Defendant Gent, nor Defendant Carr, nor to prevent abusive or improper conduct, nor to reform the policies, customs, practices of Defendant City, nor to reform the hiring or supervision of Defendant City.

205.  The failure to perform a timely or adequate investigation is a part of the custom, practice, and policies of Defendant City, and is a moving force behind a failure to protect against constitutional violations committed by Defendant City.

206.  Defendant City is vested with the authority to train, supervise, discipline, investigate and otherwise control the officers of the Minneapolis Police Department.  Defendant City has failed to change its inadequate policies, practices, customs, and usages, as asserted herein, and has failed to train, supervise, discipline, investigate and control the officers of the Minneapolis Police Department in a manner calculated to remedy deviance within the Minneapolis Police Department, including failing to act in the face of transgressions of which Defendant City knew or should have known.

207.  Defendant City has the power and responsibility to prevent the existence of the

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................... *Case No. 6:18-CV-01061-JTM-JPO*
Page 55

policies, customs, and practices as described in this Sixth Claim of the Third Amended Complaint and has failed and refused to do so, and has therefore been and continues to be deliberately indifferent to the rights of citizens with whom officers from the Minneapolis Police Department, to include without limitation Defendant Gent and Defendant Carr, come in contact.

208.    As a direct and proximate result of the foregoing, Lee Witschi suffered great physical harm and emotional pain and suffering, was deprived of his liberty, and was otherwise damaged or injured.

WHEREFORE, Plaintiff Carol A. Kellogg, as Administrator of the Estate of Lee J. Witschi, deceased, requests judgment against Defendant City, in its official capacity; compensatory damages in an amount to be determined by a jury; punitive damages in an amount that is determined to be fair and reasonable; costs and interest and attorney's fees; and other and further relief as this Court may deem just and proper.

## SEVENTH CLAIM: NURSING HOME NEGLIGENCE – WRONGFUL DEATH
### (vs. Defendant Nursing Home)

209.    Plaintiff Carol A. Kellogg, Individually and as the sole-heir-at-law to Lee J. Witschi, deceased, and consistent with K.S.A. § 60-1902 and K.S.A. § 59-506, re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society
d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 56

210.     Defendant Nursing Home and/or its respective agents, servants and/or employees, at all relevant times herein, had a duty to possess and use that degree of skill and learning ordinarily used in the same or similar circumstances by members of their respective professions in the care and treatment of Lee Witschi.

211.     Defendant Nursing Home and/or its respective agents, servants and employees, during the course of their care and treatment of Lee Witschi, breached their respective duties and were guilty of the following acts of negligence and carelessness by failing to measure up to the requisite standards of due care, skill and practice ordinarily exercised by members of their respective professions under the same or similar circumstances, to wit:

a.     By failing to adequately supervise, assess, monitor, and/or treat Lee Witschi;

b.     By failing to hire and train appropriate, qualified personnel to monitor, supervise, and/or treat Lee Witschi;

c.     By failing to have competent personnel and staff who have been properly and formerly screened and monitored in order to eliminate unfit personnel and staff;

d.     By allowing Lee Witschi to be shot with a taser gun on March 29, 2016;

e.     By failing to protect Lee Witschi from physical assault and battery by others within and from outside Defendant Nursing Home;

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . ................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 57

f.　　By failing to properly supervise the employees, agents and/or servants of Defendant Nursing Home who were responsible for the care and treatment of Lee Witschi;

g.　　By failing to provide Lee Witschi with consideration, respect, and full recognition of his dignity and individuality;

h.　　By failing to have an appropriate care plan in place to treat and/or manage Lee Witschi's health and/or behavioral concerns;

i.　　By failing to take the necessary steps and measure to treat and/or manage Lee Witschi's health and/or behavioral concerns;

j.　　By failing to take the necessary steps and measures to prevent Lee Witschi from being injured while a resident at Defendant Nursing Home;

k.　　By failing to provide a sufficient number of staff to meet Lee Witschi's care needs, to include, but not be limited to, registered nurses, licensed practical nurses, and aides of various types;

l.　　By failing to provide adequate nutrition and/or hydration to Lee Witschi;

m.　　By failing to provide quality, patient-appropriate food, drink, supplies, and medication in adequate amounts;

n.　　By failing to protect Lee Witschi from medication errors;

o.　　By failing to protect Lee Witschi's quality of life and dignity;

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 58

p.     By failing to attend generally to Lee Witschi's needs and care requirements as a resident;

q.     By allowing Lee Witschi to be abused at Defendant Nursing Home;

r.     By allowing crimes to be committed against Lee Witschi while he was a resident at Defendant Nursing Home;

s.     By failing to comply with Defendant Nursing Home's own policies and procedures in their care and treatment of Lee Witschi;

t.     By failing to adopt and institute appropriate policies and procedures to be utilized in Defendant Nursing Home's care and treatment of Lee Witschi; and

u.     In further particulars recently unknown to Plaintiff, but which are verily believed will be disclosed upon the use of proper discovery procedures during the course of this litigation.

212.     As a direct and proximate result of the aforesaid negligence of Defendant Nursing Home and its respective agents, servants and/or employees, Lee Witschi suffered an untimely death on May 19, 2016.

213.     As a direct and proximate result of the aforesaid negligence of Defendant Nursing Home and its respective agents, servants and/or employees, Lee Witschi's heirs have sustained damage and injury, as provided in the Kansas Statutes, specifically, but not limited to, K.S.A. §

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................... *Case No. 6:18-CV-01061-JTM-JPO*
Page 59

60-1901 through K.S.A. § 60-1905, along with any other item of injury or damage recoverable within a wrongful death claim in the State of Kansas.

214.    The negligence of Defendant Nursing Home was outrageous and constituted gross negligence and demonstrated willful, wanton, and malicious misconduct and a conscious disregard for the rights of Lee Witschi, thereby allowing the consideration of punitive damages.

WHEREFORE, Plaintiff Carol A. Kellogg, Individually and as sole heir-at-law to Lee J. Witschi, deceased, pursuant to K.S.A. § 60-1902 and K.S.A. § 59-506, requests judgment against Defendant Nursing Home; compensatory damages in an amount to be determined by a jury; punitive damages in an amount that is determined to be fair and reasonable; costs and interest and attorney's fees; and other and further relief as this Court may deem just and proper.

## EIGHTH CLAIM: NURSING HOME NEGLIGENCE – SURVIVAL ACTION
### (vs. Defendant Nursing Home)

215.    Plaintiff Carol A. Kellogg, as Administrator of the Estate of Lee J. Witschi, deceased, and consistent with K.S.A. § 60-1801, re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

216.    Defendant Nursing Home and/or its respective agents, servants and/or employees, at all relevant times herein, had a duty to possess and use that degree of skill and learning ordinarily used in the same or similar circumstances by members of their respective professions in the care and treatment of Lee Witschi.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . .................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 60

217.    Defendant Nursing Home and/or its respective agents, servants and employees, during the course of their care and treatment of Lee Witschi, breached their respective duties and were guilty of the following acts of negligence and carelessness by failing to measure up to the requisite standards of due care, skill and practice ordinarily exercised by members of their respective professions under the same or similar circumstances, to wit:

      a.      By failing to adequately supervise, assess, monitor, and/or treat Lee Witschi;

      b.      By failing to hire and train appropriate, qualified personnel to monitor, supervise, and/or treat Lee Witschi;

      c.      By failing to have competent personnel and staff who have been properly and formerly screened and monitored in order to eliminate unfit personnel and staff;

      d.      By allowing Lee Witschi to be shot with a taser gun on March 29, 2016;

      e.      By failing to protect Lee Witschi from physical assault and battery by others within and from outside Defendant Nursing Home;

      f.      By failing to properly supervise the employees, agents and/or servants of Defendant Nursing Home who were responsible for the care and treatment of Lee Witschi;

      g.      By failing to provide Lee Witschi with consideration, respect, and full

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 61

recognition of his dignity and individuality;

h.      By failing to have an appropriate care plan in place to treat and/or manage Lee Witschi's health and/or behavioral concerns;

i.      By failing to take the necessary steps and measure to treat and/or manage Lee Witschi's health and/or behavioral concerns;

j.      By failing to take the necessary steps and measures to prevent Lee Witschi from being injured while a resident at Defendant Nursing Home;

k.      By failing to provide a sufficient number of staff to meet Lee Witschi's care needs, to include, but not be limited to, registered nurses, licensed practical nurses, and aides of various types;

l.      By failing to provide adequate nutrition and/or hydration to Lee Witschi;

m.      By failing to provide quality, patient-appropriate food, drink, supplies, and medication in adequate amounts;

n.      By failing to protect Lee Witschi from medication errors;

o.      By failing to protect Lee Witschi's quality of life and dignity;

p.      By failing to attend generally to Lee Witschi's needs and care requirements as a resident;

q.      By allowing Lee Witschi to be abused at Defendant Nursing Home;

r.      By allowing crimes to be committed against Lee Witschi while he was a

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.*. . ................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 62

resident at Defendant Nursing Home;

s.     By failing to comply with Defendant Nursing Home's own policies and procedures in their care and treatment of Lee Witschi;

t.     By failing to adopt and institute appropriate policies and procedures to be utilized in Defendant Nursing Home's care and treatment of Lee Witschi; and

u.     In further particulars recently unknown to Plaintiff, but which are verily believed will be disclosed upon the use of proper discovery procedures during the course of this litigation.

218.    As a direct and proximate result of the aforesaid negligence of Defendant Nursing Home and its respective agents, servants and/or employees, Lee Witschi, prior to his death on May 19, 2016, suffered physical injury, emotional injury and pain, suffering and mental anguish.

219.    In addition, as a direct and proximate result of the aforesaid negligence of Defendant Nursing Home and its respective agents, servants and/or employees, Lee Witschi incurred medical expenses and other recoverable economic expenses, all of which the Estate of Lee J. Witschi is claiming in this case.

220.    The negligence of Defendant Nursing Home was outrageous and constituted gross negligence and demonstrated willful, wanton, and malicious misconduct and a conscious disregard for the rights of Lee Witschi, thereby allowing the consideration of punitive damages.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . .................................. *Case No. 6:18-CV-01061-JTM-JPO*
Page 63

221.   As a direct and proximate result of the aforesaid negligence of Defendant Nursing Home and/or its respective agents, servants and employees, Lee Witschi incurred any and all injury and damage that is recoverable in the State of Kansas under a survival claim brought through K.S.A. § 60-1801.

WHEREFORE, Plaintiff Carol A. Kellogg, as Administrator of the Estate of Lee J. Witschi, deceased, pursuant to K.S.A. § 60-1801, requests judgment against Defendant Nursing Home; compensatory damages in an amount to be determined by a jury; punitive damages in an amount that is determined to be fair and reasonable; costs and interest and attorney's fees; and other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff expressly requests that all issues of fact triable as a matter of right under the Seventh Amendment to the United States Constitution be tried to a jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Wichita, Kansas, as the place for trial in this matter.

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al. . . ................................. Case No. 6:18-CV-01061-JTM-JPO*
Page 64

Respectfully submitted,

Tom Wagstaff, Jr.      KS Bar #19511
Michelle C. Pflumm    KS Bar #26725
LAW OFFICE OF TOM WAGSTAFF, JR., LLC
4520 Main Street – Suite 1570
Kansas City, MO 64111
Telephone:      816-708-0524
Facsimile:      816-708-0561
E-mail:

tom@thewagstafflawfirm.com
michelle@thewagstafflawfirm.com
***ATTORNEYS FOR PLAINTIFF***

United States District Court for the District of Kansas
*Kellogg v. The Evangelical Lutheran Good Samaritan Society*
*d/b/a Good Samaritan Society B Minneapolis, et al.* . . ................................... *Case No. 6:18-CV-01061-JTM-JPO*
Page 65

## CERTIFICATE OF SERVICE

I hereby certify that on this *2nd* day of *November* 2018, I electronically filed the foregoing with the Clerk of the Court, which will send a notice of electronic filing to all counsel of record in this matter listed below:

Eric V. Turner
Foulston Siefkin, LLP
32 Corporate Woods – Suite 600
9225 Indian Creek Parkway
Overland Park, KS 66210
Telephone:     913-253-2176
Email:     eturner@folston.com
***Attorney for Defendant***
***Ottawa County, Kansas***

Toby Crouse
Crouse, LLC
11184 Antioch Road - No. 253
Overland Park, KS 66210
Telephone:     913-957-6832
Email: tcrouse@crousellc.com
***Attorney for Defendant***
***Ottawa County, Kansas***

Kenneth E. Holm
John J. Gates
Elizabeth A. Murray
Baty, Holm, Numrich & Otto P.C.
4600 Madison Avenue – Suite 210
Kansas City, MO 64112-3019
Telephone:     816-531-7200
Fax:     816-531-7201
Email:     kholm@batyholm.com
Email:     jgates@batyholm.com
Email:     emurray@batyholm.com
***Attorney for Defendant Good Samaritan***
***Society, Inc. d/b/a The Evangelical Lutheran Good Samaritan***
***Society and Good Samaritan Society – Minneapolis, Kansas***

Allen G. Glendenning
Watkins Calcara, Chtd.
1321 Main Street – Suite 300
P.O. Drawer 1110
Great Bend, KS 67530
Telephone:     620-792-8231
Fax:     620-792-2775
Email: aglenden@wcrf.com
***Attorney for Defendant City of***
***Minneapolis, Kansas***