**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CAROL A. KELLOGG, Individually, and | ) | |
| As sole Heir-at-Law and Administrator | ) | |
| Of the Estate of Lee J. Witschi, deceased | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 6:18-CV-01061-JTM-JPO |
| | ) | |
| v. | ) | |
| | ) | |
| GOOD SAMARITAN SOCIETY, INC. | ) | |
| a/k/a THE EVANGELICAL LUTHERAN | ) | |
| GOOD SAMARITAN SOCIETY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OTTAWA COUNTY DEFENDANTS'
## MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Respectfully Submitted,

CROUSE LLC

By:  _/s/ Toby Crouse_
    Toby Crouse, KS #20030
11184 Antioch, No. 253
Overland Park, Kansas 66210
Phone: 913.957.6832
Email: tcrouse@crousellc.com

*and*

FOULSTON SIEFKIN LLP

By:  _/s/ Eric Turner_
    Eric Turner, KS #25065
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, KS 66210-2000
Telephone: (913) 498-2100
Facsimile:  (913) 498-2101
Email:  eturner@foulston.com

*Attorneys for Defendant*
*Ottawa County, Kansas*

712106

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................2

GLOSSARY ...........................................................................................................3

I.  INTRODUCTION..........................................................................................4

   A.  Governing Standards: Fed. R. Civ. P. 12(b)(6). ....................................5

   B.  Background ...........................................................................................5

II.  ARGUMENT AND AUTHORITIES.............................................................11

   A.  The statute of limitations bars the claims against Undersheriff Thornton and Sheriff Coleman. .............................................................11

   B.  Undersheriff Thornton is entitled to qualified immunity. ................. 13

      1.  The Third Amended Complaint alleges no constitutional violation. ..............13

      2.  There is no clearly established law.......................................15

   C.  The official-capacity claims against all Ottawa County Defendants must fail. ............................................................................................ 19

      1.  There is no underlying constitutional violation...................20

      2.  Sheriff Coleman is entitled to Eleventh Amendment immunity ....................20

      3.  There is no basis for municipal liability against Sheriff Coleman ..................21

III.  CONCLUSION ...........................................................................................23

CERTIFICATE OF SERVICE.............................................................................. 23

# GLOSSARY

The Ottawa County Defendants offer the following glossary of terms and citation conventions used in this pleading. *Cf.* 10th Cir. R. 28.2(C)(6).

| PEOPLE OR ENTITIES | |
|---|---|
| **City of Minneapolis** | Defendant City of Minneapolis, Kansas, a municipal corporation as defined by K.S.A. 12-105a(a) and K.S.A. 75-6102(b). ECF No. 57, ¶ 9. |
| **Coleman** | Defendant Keith Coleman, Sheriff of Ottawa County, Kansas, in his official capacity. ECF No. 57, ¶ 8. |
| **Good Samaritan** | Defendant Good Samaritan Society, Inc. a/k/a The Evangelical Lutheran Good Samaritan Society is a skilled nursing facility located in Minneapolis, Kansas. ECF No. 7, ¶ 14. |
| **Kellogg** | Plaintiff Carol A. Kellogg is the daughter and only living heir-at-law of Lee J. Witschi, deceased. ECF No. 57, ¶ 5. She is the sole heir-at-law and Administrator of the Estate of Lee J. Witschi. ECF No. 57 at 1. |
| **Board of County Commissioners of Ottawa County** | Defendant Board of County Commissioners of Ottawa County, Kansas, a municipal corporation as defined by K.S.A. 12-105a(a) and K.S.A. 75-6102(b). ECF No. 57, ¶ 30. |
| **Thornton** | Defendant Russell Thornton, Undersheriff of Ottawa County, Kansas, in his individual and official capacities. ECF No. 57, ¶ 23-24. |
| **Witschi** | Decedent Lee J. Witschi, a former resident of Salina, Kansas and the Good Samaritan skilled nursing home. ECF No. 57, ¶ 6. Witschi died on May 19, 2016. *Id.* at ¶ 6, 62. |

| COURT DOCUMENTS, TERMS, AND OTHER ITEMS | |
|---|---|
| **911 Call** | The audio recording of the 911 call to Ottawa County that occurred on March 29, 2016 in which Good Samaritan called for police assistance with Lee Witschi. A copy of the audio recording is being filed conventionally on Disc 1 with the original filename Good Sam 911 call.wma. *See* ECF No. 70. |
| **Complaint** | Plaintiff's initial complaint, filed on February 27, 2018. ECF No. 1. |
| **First Amended Complaint** | Plaintiff's first amended complaint, filed on March 29, 2018. ECF No. 3. |
| **Second Amended Complaint** | Plaintiff's second amended complaint, filed on May 24, 2018. ECF No. 7. |
| **Third Amended Complaint** | Plaintiff's third amended complaint, filed on November 2, 2018. ECF No. 57. |

* * * * *

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CAROL A. KELLOGG, Individually, and | ) | |
| As sole Heir-at-Law and Administrator | ) | |
| Of the Estate of Lee J. Witschi, deceased | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 6:18-CV-01061-JTM-JPO |
| | ) | |
| v. | ) | |
| | ) | |
| GOOD SAMARITAN SOCIETY, INC. | ) | |
| a/k/a THE EVANGELICAL LUTHERAN | ) | |
| GOOD SAMARITAN SOCIETY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OTTAWA COUNTY DEFENDANTS'
MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

## I.   INTRODUCTION

On March 29, 2016, the Good Samaritan nursing home called the Minneapolis, Kansas police because one of its residents, Lee Witschi, had struck another of its resident and refused to go to the emergency room for evaluation.[1] The responding Minneapolis police officers subsequently summoned additional help, and Undersheriff Russell Thornton from the Ottawa County Sheriff's office responded. Ultimately, Undersheriff Thornton deployed his Taser against Witschi.

The Third Amended Complaint is the fourth time that Plaintiff has attempted to state a cause of action concerning this incident. ECF No. 56, p. 1 n.1. Although an 81-page Notice of Claim letter, ECF No. 24-1, dated September 7, 2017 identified the individual officers involved in the incident by name, described their conduct in detail, and suggested that it violated the United States Constitution,

---

[1] The Ottawa County Defendants will not rehash the distinction between the constitutional claims against them and the medical malpractice claims against the nursing home. *See generally* ECF No. 26; ECF No. 56

none of the three preceding complaints attempted to state an individual-capacity claim or name any individual as a defendant. Instead, the prior pleadings asserted time-barred state law claims and an official-capacity claim against an entity that was not capable of suing or being sued under Kansas law. ECF No. 26. Having agreed to dismiss the state-law claims, ECF No. 46, p. 7, the Third Amended Complaint now purports to assert a time-barred individual-capacity claim against Undersheriff Thornton and an official-capacity claim against Sheriff Keith Coleman, Thornton, and the Board of County Commissioners of Ottawa, Kansas (collectively "Ottawa County Defendants"). ECF No. 57.

The Ottawa County Defendants are entitled to judgment as a matter of law. *First*, the current claims are barred by the statute of limitations. *Second*, Undersheriff Thornton is entitled to qualified immunity on the individual-capacity claim. *Third*, the official-capacity claim fails as a matter of law, is barred by the Eleventh Amendment, and fails to satisfy the standards required under *Monell*. Accordingly, the Ottawa County Defendants respectfully request judgment as a matter of law.

### A.      Governing Standards: Fed. R. Civ. P. 12(b)(6).

The Ottawa County Defendants incorporate by reference the previously stated standards governing this motion. ECF No. 26, pp. 5-6; *see also* Fed. R. Civ. P. 10(c).

### B.      Background

The facts below are taken from the Third Amended Complaint, ECF No. 57. The Ottawa County Defendants reserve the right to contest each allegation of fact in all later proceedings.

**1.** Good Samaritan is a 64-bed nursing facility located in Minneapolis, Kansas. ECF No. 57, ¶¶ 49, 51. It provides skilled nursing care and special mental health services to residents that are experiencing functional impairments. *Id.* Lee Witschi was admitted to Good Samaritan on November 12, 2013. ECF No. 57, ¶ 15. Witschi died on May 19, 2016 at Good Samaritan. ECF No. 57, ¶ 6.

Witschi was admitted following a November 2013 hospitalization that evaluated his behavioral change, memory loss, and other symptoms of possible dementia that had raised concerns about his

ability to live independently. ECF No. 57, ¶ 53. Witschi was diagnosed with "'slowly progressive de-mentia' of likely Alzheimer's type or 'other behavioral dementia known to have behavioral disturb-ances as a feature of the disease.'" *Id.* at ¶ 55. Witschi was admitted to Good Samaritan's memory care unit, known as "the Cove," that specialized in personalized care. *Id.* at ¶¶ 62-63.

The Third Amended Complaint makes a series of allegations concerning Good Samaritan's care and treatment of Witschi that are not particularly relevant to the claims against the Ottawa County Defendants. Generally speaking, it asserts that Good Samaritan breached the relevant standard of care that led to Witschi's death. ECF No. 57, ¶¶ 209-221.

**2.** The claims against the Ottawa County Defendants stem from a March 29, 2016 incident that occurred at Good Samaritan. ECF No. 57, ¶¶ 66-104. Good Samaritan called for police assistance because Witschi "had been in a confrontation with another nursing home resident earlier that day and [they] needed assistance to get Lee Witschi" into a van "so that he could be transported to Salina Regional" Health Center.[2] ECF No. 57, ¶¶ 66, 68. Minneapolis Police officers Gent and Carr

---

[2]     The 9-1-1 call from the nursing home to the Ottawa County dispatcher contains assertions that "we have a resident who needs to go to the ER for, basically, he was beating the crap out of another resident," "we've got to keep our residents safe," and "we can't have him here like this." Because communication between the nursing home and the Ottawa County dispatcher asking for police assistance is referenced in the Third Amended Com-plaint, ECF No. 57, ¶¶ 66-68, this Court can and should consider the recording of the 9-1-1 call when deciding this Rule 12 Motion. *See Scott v. Harris*, 550 U.S. 372, 379-80 (2007); *Estate of Ronquillo v. City & Cty. of Denver*, 720 F. App'x 434, 437 (10th Cir. 2017) (considering video recording); *Garcia v. Does*, 779 F.3d 84, 87-88 (2d Cir. 2015); *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017); *Albers v. Jenison*, No. 18-2185, 2018 WL 5311862, at *2 (D. Kan. Oct. 26, 2018); *Finley v. City of Colby*, No. 17-1215, 2018 WL 3472816, at *3 (D. Kan. July 19, 2018); *Choate v. City of Gardner*, No. 16-2118, 2016 WL 2958464, at *3 n.2 (D. Kan. May 23, 2016); *Muniz v. Davis*, No. 13-666, 2014 WL 4259385, at *3 (W.D. Tex. Aug. 27, 2014); *Jackson v. Gatto*, No. 13-2516, 2014 WL 2743130, at *3 (D. Colo. June 17, 2014); *Hyung Seok Koh v. Graf*, No. 11-2605, 2013 WL 5348326, at *9 (N.D. Ill. Sept. 24, 2013); *but see McHenry v. City of Ottawa*, No. 16-3726, 2017 WL 4269903, at *4 (D. Kan. Sept. 26, 2017). As one example of how the Third Amended Complaint is contradicted by the recording, the Third Amended Complaint refers multiple times to a "non-emergent doctor's appointment" or "appointment." ECF No. 57, ¶¶ 75, 78, 80, 93, 95. But the recording makes clear that the reason the nursing home called for police assistance was because Witschi needed to go to the emergency room immediately for evaluation. In other words, it was an emergency and there was no "appointment." A copy of this recording will be filed conventionally and served upon all parties upon this Court's granting of the contemporaneously filed Motion for Leave to File Conventionally.

responded. *Id.* at ¶¶ 66-67. A nursing home staff member told the officers that "Lee Witschi had been in a confrontation with another nursing home resident earlier that day and that Defendant Nursing Home needed assistance to get Lee Witschi in Defendant Nursing Home's van so that he could be transported to Salina Regional." *Id.* at ¶ 68. Although two officers were on the scene, Officer Gent radioed for additional assistance, and Undersheriff Thornton arrived at the nursing home. *Id.* at ¶ 76. Not only did Witschi refuse the direction of the nursing home staff members, he refused their orders and moved about the home, even asking the officers to "back up." *Id.* at ¶¶ 71-82.

The Third Amended Complaint faults the officers for being negligent in the way they treated Witschi. It alleges the officers failed to manage Witschi's "condition and behavioral concerns appropriately," failed to secure "the necessary information about Lee Witschi's health and medical concerns," did not seek "the appropriate assistance from staff at Defendant Nursing Home to appropriately manage and communicate" with Witschi, made no attempt to contact Witschi's family members, and did not consider taking Witschi to Salina Regional another day. *Id.* at ¶¶ 94-97. Instead, they told Witschi that "his only option" was "to go voluntarily with them to the doctor or to be physically forced to do so." *Id.* at ¶ 100. Defendant Gent told the nursing home staff that the officers did not want to place their hands on Witschi, but that it may be the only way he would comply.

Eventually, Witschi rose from his chair in the living area and began to walk. ECF No. 57, ¶ 82. As he walked past the officers, Undersheriff Thornton deployed his taser, striking Witschi in the back. *Id.* Thereafter, Witschi "fell face first to the ground with no assistance." *Id.* at ¶ 83. As a result of the fall, Witschi suffered injury, including a head injury. *See id.*

While Witschi was on the floor, the officers "inexplicably and with excessive, unreasonable, brutal, and unnecessary force and in further violation of Lee Witschi's Fourth Amendment rights, participated in physically forcing his hands behind his back and then cuffed him, fracturing one of

Lee's wrists." ECF No. 57, ¶ 85. The officers thereafter "placed [Witschi] on a stretcher with his hands still secured behind his back and assisted in strapping him down." *Id.* at ¶ 86. The Third Amended Complaint alleges conduct that purportedly violated the Fourth Amendment of the United States Constitution. ECF No. 57, ¶¶ 105-208.

**3.** Witschi later died on May 19, 2016 from unrelated medical complications. ECF No. 57, ¶ 6. Plaintiff Carol Kellogg is the sole Heir-At-Law and Administrator of the Estate of her late father, Lee Witschi. *Id.* at ¶ 7. Since at least September 7, 2017, she has been asserting that the Ottawa County Defendants violated her father's right to be free from excessive force.

**a.** On September 7, 2017, Plaintiff sent a letter, pursuant to K.S.A. § 12-105b, to officials with the City of Minneapolis, Ottawa County, Kansas, and Good Samaritan. ECF No. 24-1. The 81-page letter alleged, among other things, that Defendants Gent, Carr, and Thornton responded to the nursing home and that Thornton used a taser against Witschi. *Id.* at p. 2. Not only did it describe the incident and these defendants' body camera footage depicting their conduct towards Witschi, it alleged that these officers' conduct constituted excessive force in violation of the Fourth Amendment to the United States Constitution. *Id.* at pp. 2-3, 9-12, and 68-79 (describing the officers, including Thornton, by name and the conduct they each undertook).

**b.** Plaintiff filed the initial Complaint on February 27, 2018. ECF No. 1. The Complaint asserted a claim against Good Samaritan and the City of Minneapolis. Neither Ottawa County nor anyone associated with it were named in the Complaint.

**c.** Before service of the Complaint occurred and two years to the day after the tasing incident occurred, Plaintiff filed the First Amended Complaint on March 29, 2018. ECF No. 3. The First Amended Complaint was similar to the Complaint, but added "Ottawa County, Kansas" as a defendant. Again, Plaintiff did not name any individual defendant. Plaintiff served the First Amended

Complaint upon Good Samaritan, but soon thereafter learned that there was a concern about proper nomenclature surrounding the proper Good Samaritan entity and sought leave to amend. ECF No. 4; *see also* ECF No. 5 (granting motion for leave to amend).

**d.** On May 24, 2018, Plaintiff filed the Second Amended Complaint, which clarified the proper Good Samaritan entity and maintained the same claims against the City of Minneapolis and Ottawa County. ECF No. 7. Although the Notice of Claim letter identified the officers by name and described their alleged conduct, none of the three complaints named or asserted a claim against any individual officer or deputy, presumably to avoid the defense of qualified immunity. Nor did any of the complaints attempt to name or serve either the Board of County Commissioners of Ottawa County or the Ottawa County Sheriff in his official capacity. Instead, the Second Amended Complaint asserted that Ottawa County, Kansas was responsible for a violation of the United States Constitution and state tort law. ECF No. 7, ¶¶ 69, 71.

**4.** Ottawa County, Kansas filed a motion to dismiss on June 19, 2018. ECF Nos. 25, 26. It argued that (i) it was an improper defendant, (ii) the state law claims were barred by the statute of limitations, and (iii) it could not be held liable for the constitutional claim. ECF No. 26, pp. 10-14.

On August 22, 2018, Plaintiff filed two pleadings in response. In the Memorandum in Opposition, Plaintiff agreed that the county was an improper defendant, that the state-law claims were time barred, and that, if she was permitted to name the Board of County Commissioners, the allegations state a claim. ECF No. 46. In the Motion to Amend, Plaintiff sought to "correct a misnomer of a currently named Defendant to its proper entity name, clarify and remove claims against currently named Defendants, name four additional Defendants, and add a claim for punitive damages." ECF No. 43, p. 4.

712106

Ottawa County, Kansas was forced to seek procedural clarity. It first moved to stay briefing on the largely unquestioned Rule 12 motion pending resolution of the Motion to Amend. ECF No. 53. It also opposed Plaintiff's serial attempt for leave to amend because it would impose an undue burden, Plaintiff failed to explain the basis for her delay in filing her amendment, and Plaintiff failed to cure the deficiencies in prior pleadings. ECF No. 54. This Court denied Ottawa County, Kansas's motion to dismiss as moot and granted Plaintiff's motion to amend. ECF No. 56.

**5.** Plaintiff filed the Third Amended Complaint on November 2, 2018. ECF No. 57. For the first time in this litigation, Plaintiff names and purports to assert a claim against Sheriff Coleman in his official capacity only, Undersheriff Thornton, in both his official and individual capacities, and the Board of County Commissioners of Ottawa County, Kansas. The only claim against these defendants is that Thornton's conduct constitutes excessive force in violation of the Fourth Amendment to the United States Constitution and the other defendants are responsible for Thornton's conduct. ECF No. 57, ¶¶ 105-122, 159-191.

* * * * *

## II.    <u>ARGUMENT AND AUTHORITIES</u>

Dismissal is required because the Third Amended Complaint fails to state a claim upon which relief can be granted. *First*, the statute of limitations bars newly added claims against Sheriff Coleman and Undersheriff Thornton. *Second*, Undersheriff Thornton is entitled to qualified immunity. *Third*, *Third*, the official-capacity claims are barred by the Eleventh Amendment and fail as a matter of law. Accordingly, the Ottawa County Defendants respectfully request judgment as a matter of law.

### A.    The statute of limitations bars the claims against Undersheriff Thornton and Sheriff Coleman.

In a claim under 42 U.S.C. § 1983, the Court applies the period of limitations from the state's personal-injury statute. *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). Kansas has a two-year period of limitations for personal-injury claims. K.S.A. 60-513(a)(4). Thus, the period of limitations for § 1983 actions arising in Kansas is two years. *See Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991). A statute-of-limitation question is appropriately resolved on a Federal Rule of Civil Procedure 12(b) motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

Here, the alleged conduct took place on March 29, 2016. ECF No. 57, ¶ 113. Despite Undersheriff Thornton and Sheriff Coleman being identified in the September 7, 2017 Notice of Claim letter, ECF No. 24-1, Plaintiff chose not to name either of them as a defendant or seek damages from them in the original, First Amended, or Second Amended Complaints. They were first named as defendants in the Third Amended Complaint that was filed on November 2, 2018. ECF No. 57. It is clear from the face of the Third Amended Complaint that the right to sue Undersheriff Thornton and Sheriff Coleman has been extinguished well before they were named in this action. *See Aldrich*, 627 F.2d at 1041 n.4.

The amendment adding Undersheriff Thornton and Sheriff Coleman as defendants does not relate back to the date of the original Complaint under Federal Rule of Civil Procedure 15(c). In relevant part of the rule, an amendment adding a new party relates back to the date of the original pleading if "the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15 (c)(1)(C). Thus, the question is whether Undersheriff Thornton and Sheriff Coleman knew or should have known that but for a mistake of identity the action would have been brought against them.

Plaintiff has not and cannot satisfy any of these elements, but is likely to argue that there was a mistake of identity. That effort—if it is made—fails. Mistake of identity only applies when there has been a misnomer or a misidentification of the proper defendant involved in the incident. *See Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004) (describing other similar case law, quoting Advisory Committee Notes); *accord Bell v. City of Topeka*, 279 F. App'x 689, 692 (10th Cir. 2008). This means that adding Undersheriff Thornton and Sheriff Coleman is not a mistake that is recognized under existing law. *See Garrett*, 362 F.3d at 696. In other words, a "mistake does not exist just because plaintiff omitted a potentially liable party from the original complaint." *Spicer v. New Image Intern., Inc.*, 447 F. Supp. 2d 1226, 1233-34 (D. Kan. 2006) (rejecting relation back where it appeared plaintiff simply sought to add new parties when he determined they might be liable). Further, "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully formed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 552 (2010).

Plaintiff's decision not to include individual defendants in any prior complaint can only be strategic and intentional. The identities of the new defendants were known ***before*** the original complaint was filed. The September 2017 Notice of Claim Letter identified the individual officers by name, described their videotaped conduct, and asserted that their conduct constituted a violation of the Fourth Amendment. ECF No. 24-1. Because Plaintiff could have but chose not to assert individual-capacity claims against Thornton precludes Plaintiff's attempt to do so now and precludes any relation back. *See* 6A *Federal Practice & Procedure*, § 1498.2 & n.19 (Apr. 2017 Supp.) (citing cases where relation back was denied when capacity was changed). Because the claims were pled after the statute of limitation had expired and do not relate back, the claims against Undersheriff Thornton and Sheriff Coleman must be dismissed as untimely filed. *See Glasser v. King*, 721 F. App'x 766, 772 (2018); *Spicer*, 447 F. Supp. 2d at 1233; *Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, 746 F. Supp. 40, 43 (D. Kan. 1990) (rejecting relation back where plaintiff was aware of potential defendant but unsure about liability, noting that "any 'mistake' in failing to name Henkel as a defendant in the original complaint was the result of Manildra's failure to diligently research the liability of the two potential defendants").

**B.      Undersheriff Thornton is entitled to qualified immunity.**

The individual-capacity claim, pled only against Undersheriff Thornton, should be dismissed. It does not allege a violation of clearly established constitutional law.

**1.      The Third Amended Complaint alleges no constitutional violation.**

Not only is Plaintiff's constitutional claim time barred, it is substantively deficient. To state a claim under 42 U.S.C. § 1983, the Third Amended Complaint must allege that a person acting under color of state law caused Witschi to be deprived of a right secured by the Constitution or laws of the United States. *See Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009); *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006). With regard to Undersheriff Thornton, the Third Amended Complaint fails to

satisfy this standard.[3] The Fourth Amendment reasonableness standard governs a claim of unlawful seizure and excessive force. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Under governing law, the detention and use of force were reasonable in light of the situation.

*First*, the detention was not unreasonable in light of the officers' recognized duty arising under the community caretaking function. Under it, police officers may exercise functions wholly separate and apart from investigating a crime, including stopping or seizing a citizen for his own safety or the safety of others. *Arden v. McIntosh*, 622 F. App'x 707, 709 (10th Cir. 2015). It is based on specific and articulable facts that reasonably warrant an intrusion into the individual's liberty and arises when the government's interest outweighs the individual's interest in being free from arbitrary governmental interference. *See Storey v. Taylor*, 696 F.3d 987, 993 (10th Cir. 2012). That is what the Third Amended Complaint alleges happened here: two officers were called to assist the nursing home when its patient had committed a battery against one of its residents, those officers called a third officer for assistance, and they attempted to aid the nursing home in taking Witschi to the hospital pursuant to his doctor's order for observation and evaluation in light of Witschi's assault. *See* ECF No. 57, ¶¶ 66-68.

Kansas law provides specific authority to take Witschi into custody under the circumstances. Under K.S.A. 59-2953, "any law enforcement officer who has a reasonable belief formed upon investigation that a person is a mentally ill person and because of such person's mental illness is likely to cause harm to self or others if allowed to remain at liberty may take the person into custody without a warrant." Here, according to the Third Amended Complaint, the officers responded to an emergency call and were told that Witschi had been in a confrontation with another nursing home resident earlier. *See* ECF No. 57, ¶¶ 66-68. Undersheriff Thornton responded to a radio call from the officers seeking

---

[3]    The Third Amended Complaint does not state any other individual-capacity claim against any other individual from among the Ottawa County Defendants.

assistance. *See* ECF No. 57, ¶ 76. Under these circumstances, especially in light of the community caretaking function and K.S.A. 59-2953, Undersheriff Thornton was not unreasonable in detaining Witschi.

*Second*, using force—when Witschi resisted efforts to take him into custody and failed to abide by the commands of nursing home staff and officers—was not unreasonable. *See* ECF No. 57, ¶¶ 73-79 (describing Witschi's failure to comply). The reasonableness standard, which is the measuring stick for any excessive force claim, is an objective legal inquiry judged from the on-scene perspective of an officer who is forced to make a split-second judgment in circumstances that are tense, uncertain, and rapidly evolving. *See Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014). Time and again, courts have recognized that the right to make an arrest or detention necessarily carries with it the right to use some degree of physical force. *See generally Graham*, 490 U.S. at 396. Under the circumstances here (including the prior battery against another resident, the nursing home's call for police assistance, the police's request for additional assistance, and Witschi's refusal to abide by their commands), it was not unreasonable to use a Taser to disable Witchi and handcuff him while transporting him to the hospital. *See Hinton v. City of Elwood*, 997 F.2d 774, 781-82 (10th Cir. 1993) (no constitutional violation when stun gun was used on individual resisting arrest).

### 2. There is no clearly established law.

This Court need not even address whether a constitutional violation has been pled because there was no clearly established law that gave Undersheriff Thornton notice that his discretionary conduct was unlawful. *See, e.g., Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (granting qualified immunity for officer who shot and killed an unarmed person because of a report that the individual posed a deadly risk to another). Accordingly, dismissal is required.

712106

Suits against government actors allow those wronged by governmental misconduct a method of redress. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). Although such suits permit the possible vindication of a plaintiff's federal rights, non-meritorious suits exact a high cost on both society and government officials. *See id.* These suits may unduly interfere with the discharge of government officials' duties because of the constant threat of civil litigation and potential money damages. *See Harlow,* 457 U.S. at 814. "[T]o submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Horstkoetter v. Department of Pub. Safety,* 159 F.3d 1265, 1277 (10th Cir. 1998) (internal quotations and citations omitted). Thus, the Court has recognized that qualified immunity should be liberally applied given the important interests to society as a whole. *See White v. Pauly*, 137 S. Ct. 548, 551-52 (2017).

To balance these competing interests, government officials performing discretionary duties are afforded qualified immunity shielding them from civil damages liability. *See Anderson*, 483 U.S. at 638; *see also Filarsky v. Delia*, 566 U.S. 377, 393-94 (2012). Qualified immunity shields an individual government official so long as the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Whether an official is protected by qualified immunity turns upon the objective legal reasonableness of the official's actions considered in light of the legal rules that were clearly established at the time the official acted. *See Messerschmidt v. Millender*, 565 U.S. 546 (2012).

There is a presumption in favor of qualified immunity for a public official acting in his or her individual capacity. *See Hidahl v. Gilpin Cnty. Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991). It therefore protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*

*v. Briggs*, 475 U.S. 335, 341 (1986); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Courts use a well-settled, two-step analytical framework for analyzing claims of qualified immunity. In particular, a court must determine whether a plaintiff has demonstrated both (i) that the defendant's actions violated the plaintiff's federal constitutional or statutory rights and, if so, (ii) that the right was clearly established at the time the conduct occurred. *See Siegert*, 500 U.S. at 231.

The rigid order-of-battle the Court previously insisted on, *see, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998), has become more flexible, *Pearson*, 555 U.S. at 236, permitting this Court the discretion to address either step first. *See Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010). Discerning whether the relevant legal rule was clearly established is a narrowly tailored exercise that is context specific. As the Court in *Anderson* recognized, nearly every right – if viewed at a sufficiently high level of generality – is clearly established. *See* 483 U.S. at 639. In order to protect the institutional interests qualified immunity serves, however, more is required. *See White*, 137 S. Ct. at 552-53 (granting petition, vacating judgment, and vacating Tenth Circuit decision because it construed the legal rule at too high of a level); *accord Pickens v. Aldaba*, 136 S. Ct. 479 (2015).

Accordingly, the precise contours of the right must have been sufficiently clear that every reasonable official in that circumstance would have understood that what he or she was doing violated that right, leaving no debate as to the lawfulness of the conduct. *See Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Ashcroft*, 563 U.S. at 740. When it is debatable whether a violation has occurred, the law by definition cannot be clearly established, and qualified immunity applies. *See Reichle*, 566 U.S. at 669-70 (quoting *Wilson v. Layne*, 526 U.S. 603, 618 (1999)).

Qualified immunity applies in at least three differing circumstances. "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal

17

quotation and citation omitted). Thus, as the Supreme Court observed in *Ashcroft*, qualified immunity gives "breathing room to make reasonable but mistaken judgments." 563 U.S. at 743; *see also Messerschmidt*, 565 U.S. at 546.

All three apply here. *First*, Plaintiff has the burden to show that a robust consensus of federal law alerted every reasonable officer that the conduct Undersheriff Thornton is accused of undertaking in this case was unlawful or that he could have and should have handled the encounter differently. Absent a robust consensus of federal law indicating that these officers' conduct in similar circumstances constituted a constitutional violation, qualified immunity applies. *See White*, 137 S. Ct. at 552; *see also Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (citing *Reichle v. Howards*, 566 U.S. at 665-66) (implying that that not even "controlling circuit precedent [may be enough to] constitute clearly established federal law"); *accord al-Kidd*, 563 U.S. at 741-42 (district court's *ipse dixit* of a holding is not controlling authority in any jurisdiction, much less in the entire country). That body of law is absent.

*Second*, the breathing room afforded by qualified immunity excuses any reasonable mistake of fact that could be attributable to Undersheriff Thornton. Thus, even if Undersheriff Thornton's belief that Witschi still posed a threat to other nursing home residents or the officers was incorrect, that belief was not unreasonable under the circumstances described in the Third Amended Complaint. As the Court in *Saucier* noted, law enforcement officers "can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution. Yet, even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, [*Anderson*, 483 U.S. 635 (1987)] still operates to grant officers immunity for reasonable mistakes as to the legality of their actions." *Saucier*, 533 U.S. at 206.

712106

*Third*, the application of the then-prevailing law to the facts available to a reasonable officer confirm that Undersheriff Thornton cannot be described as acting in either knowing violation of the law or in a manner that was plainly incompetent. As the cases repeatedly admonish, officers, who are responsible for protecting the safety of the public and themselves, are often forced to make split-second decisions when perfect knowledge is unavailable and the tense events are unfolding. Qualified immunity exists to provide them breathing room for reasonable but mistaken judgments. Here, Undersheriff Thornton deserves that protection – even if the plaintiff or this Court believes that different actions could have been taken – given Witschi's physical confrontation with another resident and immediate need for medical evaluation. *See generally Messerschmidt*, 565 U.S. at 548-53 (cataloging reasonable approaches officers could have believed were justified under facts as they understood them).

Undersheriff Thornton was neither plainly incompetent nor in knowing violation of the law. *See Kisela*, 138 S. Ct. at 1152. He is therefore entitled to qualified immunity.

## C.  The official-capacity claims against all Ottawa County Defendants must fail.

The Third Amended Complaint asserts an official-capacity claim against Sheriff Coleman, Undersheriff Thornton, and the Board of County Commissioners should be held responsible in their official capacities. *See* ECF No. 57, ¶¶ 105-122, 159-191. Only Sheriff Coleman in his official capacity could be held responsible for the acts or omissions of Undersheriff Thornton,[4] but, even against him,

---

[4]    The Third Amended Complaint also attempts to assert official-capacity claims against Undersheriff Thornton and the Board of County Commissioners. That effort is futile, as neither Thornton nor the Board of County Commissioners can set policy for or direct the operations of the Sheriff or his deputies. *See Board of Lincoln County Comm'rs v. Nielander*, 62 P.3d 247, 251 (Kan. 2003); *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997) (state law determines who is final policymaker). Rather, the Sheriff is solely responsible for directing those law enforcement operations and setting its policies. *See* K.S.A. 19-805(a). As a matter of Kansas law, only the Sheriff can be responsible for official-capacity claims arising from the acts or omissions of his or her deputies. *See generally McHenry v. City of Ottawa*, Case No. 16-2736, 2017 WL 4269903, at *11-12 (D. Kan. Sept. 26, 2017) (Board cannot incur liability for acts or omissions of sheriff's deputies).

liability is improper because (i) there was no underlying constitutional violation, (ii) Sheriff Coleman is entitled to Eleventh Amendment immunity, and (iii) there is no basis for municipal liability.

### 1. There is no underlying constitutional violation.

As discussed, the Third Amended Complaint fails to allege that Undersheriff Thornton violated the Constitution. *See* Part II.A. and B.1., *supra.* No official-capacity liability arises if no underlying constitutional violation has been established. *See, e.g., Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *see also Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1223 (10th Cir. 2006). As a result, any official-capacity Section 1983 claim must be dismissed. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

### 2. Sheriff Coleman is entitled to Eleventh Amendment immunity

Sheriff Coleman, in his official capacity, may not be sued in this Court because he is entitled to Eleventh Amendment immunity. The Eleventh Amendment bars unconsented federal suits for money damages against a state and those acting on its behalf. U.S. Const. amend. XI; *Edelman v. James*, 415 U.S. 651, 663 (1974); *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009). This protection extends to any suit in which the State is the substantial party in interest, even if not a named defendant. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).

On this basis, both the Tenth Circuit and this Court have determined that, under Kansas law, sheriffs are immune. *See Hunter v. Young*, 238 F. App'x 336, 338 (10th Cir. 2007); *Self v. Cnty. of Greenwood*, No. 12-1317-JTM, 2013 WL 615652, at *2 (D. Kan. Feb. 19, 2013). Thus, Sheriff Coleman— sued here only in his official capacity—should be dismissed from this action. *See id.*; *Broyles v. Presley*, No. 17-3174-SAC, 2018 WL 1168570, at *4-5 (D. Kan. March 6, 2018) ("Kansas sheriffs are state officers supported by particular provisions in the state statutes."); *McHenry v. City of Ottawa*, Case No. 16-2736, 2017 WL 4269903, at *11-12 (D. Kan. Sept. 26, 2017); *Stuart v. Advanced Corr. Healthcare, Inc.*,

Case No. 16-3097, 2017 WL 2985750, at *5 (D. Kan. July 13, 2017); *Gadbury v. Bush*, No. 14-3027, 2015 WL 3794441, at *2 (D. Kan. June 17, 2015); *Brown v. Kochanowski*, No. 07-3062, at *9 n.3, 2012 WL 4127959 (D. Kan. Sept. 19, 2012), *aff'd* 513 F. App'x 715 (10th Cir. 2013); *but see Trujillo v. City of Newton*, No. 12-2380, 2013 WL 535747, at *10 (D. Kan. Feb. 12, 2013) (following *Reyes v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 07-2193, 2008 WL 2704160, at *7 (D. Kan. 2008)); *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1249 n.23 (D. Kan. 2004) (ruling to contrary, as there was no Tenth Circuit authority at the time).

### 3.    There is no basis for municipal liability against Sheriff Coleman

The Third Amended Complaint also fails to identify a proper basis on which to impose official-capacity liability. A municipal entity may not be held liable under 42 U.S.C. § 1983 by way of vicarious liability. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, there must be evidence that the governmental entity caused the constitutional deprivation through its custom or policy that was enacted or has been maintained with deliberate indifference to an almost inevitable risk of constitutional injury. *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-04 (1997); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). Imposing liability without "rigorous" adherence to the requirement of culpability and causation improperly collapses into impermissible vicarious liability. *Brown*, 520 U.S. at 415.

The Third Amended Complaint generally asserts that municipal liability against Sheriff Coleman is based on lack of training. *See* ECF No. 57, ¶¶ 159-175. Circumstances supporting liability based on a failure-to-train theory are exceedingly, and justifiably, rare. *See generally Brown*, 520 U.S. at 411; *accord City of Canton v. Harris*, 489 U.S. 378, 391-92 (1989) (noting that stringent fault and causation standards are necessary to avoid unprecedented liability, as almost any plaintiff can—in hindsight—point to something that could have or should have been done differently).

This case does not fall within the theoretical possibility the Court in *Canton* surmised may exist because, among other things, there are no well-pleaded facts suggesting that any policymaker acted with a sufficiently culpable state of mind. Nor is there any identification of who, as a matter of law, is supposed to be the policymaker, what the policy was, or the basis for suggesting that the individual with authority acted with a sufficiently culpable state of mind. *See generally Brown*, 520 U.S. at 407 (concluding that "simple or even heightened negligence will not suffice"). Rather, the allegations seek simply to impose liability through vicarious liability, which is forbidden.

In the end, the Third Amended Complaint points only to an alleged constitutional violation of Undersheriff Thornton and seeks to impose liability on another entity using prohibited notions of vicarious liability. Dismissal is required because liability may not be imposed on entities in those circumstances.

* * * * *

712106

## III.     CONCLUSION

For the foregoing reasons, the Ottawa County Defendants request that this Court grant its

motion to dismiss.

Respectfully Submitted,

CROUSE LLC

By:  __/s/ Toby Crouse_____
      Toby Crouse, KS #20030
11184 Antioch, No. 253
Overland Park, Kansas 66210
Phone: 913.957.6832
Email: tcrouse@crousellc.com

*and*

FOULSTON SIEFKIN LLP

By:  _____/s/ Eric Turner_____
       Eric Turner, KS #25065
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, KS 66210-2000
Telephone:  (913) 498-2100
Facsimile:   (913) 498-2101
Email:  eturner@foulston.com

*Attorneys for Defendant*
*Ottawa County, Kansas*

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2018, I electronically filed the above and foregoing with
the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all
counsel of record.

_____/s/ Toby Crouse_____
Toby Crouse #20030

712106